*Underwood* for plaintiff: *Morehead & Reed* for def't.

---

Wickliffe *vs* Bailey's Adm'r. two cases.

APPEAL AND WRIT OF ERROR TO THE FAYETTE CIRCUIT.

*Writs of error. Parties. Possession. Vendor and Vendee.*

JUDGE MARSHALL delivered the opinion of the Court.

CHANCERY.

*Case 62.*

Oct 26.

Case stated.

IN 1814 Mary O. Russel executed a deed to Lewis Sanders, conveying to him in fee simple, and for the acknowledged consideration of $1000, a lot in the town of Lexington, described by metes and bounds. In 1817 Lewis Sanders conveyed the same lot to John Scott, Jr. who, in 1818, conveyed the same, together with three other lots in the same town, to Bailey & Longstreth, partners, by way of mortgage, to secure a debt of more than $3000. In 1837 Leslie Combs, as administrator of Bailey, alledged to have been the surviving partner of Bailey & Longstreth, and alledging himself, also, to be the administrator of Longstreth, filed this bill for foreclosure and sale of the mortgaged premises, making the heirs of Bailey, of Longstreth, and also of John Scott, Jr. on whose estate there has been no administration, defendants; and also, making defendants certain other persons alledged to have possession of the several lots, or to claim some interest in them respectively. With regard to the lot first above referred to, the bill alledges "that one Robert Wickliffe has taken possession of the second lot named in said mortgage, and has had possession of the same for some time past, without any lawful authority, and without paying any rent for the same, although he well knows that his present wife, then Mary O. Russell, conveyed the same to Lewis Sanders, by deed bearing date on the 19th day of April, 1814, of re-

cord in said office, and then said Sanders and his wife conveyed the same to the said John Scott, Jr. by their deed to him bearing date 1st March, 1817, of record in said office."

Wickliffe answered, admitting that he was possessed of the lot embraced in the paper purporting to be the deed of Mary O. Russell, now Wickliffe, to Lewis Sanders, claiming it as his own, and adverse to the claim of the complainant and the rest of the world; that he became so possessed between ten and eleven years before, without any knowledge of the pretended claim of the complainant, or the said Sanders, and has enclosed it and caused a stable to be erected on it; that he knows nothing of the consideration given or promised for the deed to Sanders, and has no doubt that nothing good or valuable was paid, as Sanders was, about its date and shortly before and after, notoriously insolvent; but upon the subject of the deed and whether a cent was paid for it, although he has made particular enquiry of the supposed grantor, he can get no satisfactory information about it, she having no distinct recollection of the transaction; "which he accounts for by the fact that she did not attend to the sales of lots herself, but had an agent who did, who has long since left the State, leaving no list or memorandum, as far as respondent can find, of his agency, or who did or did not purchase lots at sales made by him in Lexington, who made payments." He says he believes he knows nothing further, personally, of the business or of the complainant's rights, and denying the right of the complainant to relief in the premises, or to a decree against him; he prays to be dismissed, &c.

After service of process upon many defendants, and order for appearance and traverse as to others who were non-residents, and on the answer of several of Scott's heirs, consenting in effect, to the relief sought by the bill, and denying that any thing had come to them by descent from the mortgagor, the Court, upon final hearing, decreed a sale of the lots embraced in the mortgage, and subsequently made a rule upon Wickliffe to show cause why a writ of possession should not issue, to put the purchaser of the lot held by him, in possession thereof. On

the return of the rule, which was made in the name of the complainant and the purchaser, Wickliffe resisted the change of possession, but the Court ordered a writ of assistance to issue for effecting that object. From which order Wickliffe appealed, and he also prosecutes a writ of error in the name of all the defendants to the suit, to reverse the decree of sale.

It was admitted, in answer to a rule obtained in this Court, that Wickliffe prosecutes the writ of error in the name of all of the defendants, without any authority, except that which he may have as a co-defendant. But he has no authority, on this ground, further than he has a joint interest with them, and as it is palpable that he can have no such joint interest with those defendants who have no interest in the lot which he holds, and in which alone he claims any interest, he certainly cannot use their names, nor avail himself of any error in the proceeding affecting only them, or the lots in which they were interested. He has no right to reverse the decree as to those lots. It is also clear that he has no joint or common interest with the representatives of the mortgagor or mortgagees, in opposition to all of whom he claims the lot to which the question before us must be confined, and cannot, therefore, use their names in a writ of error prosecuted for his own exclusive benefit. Standing opposed to the interest of all of these parties, he is entitled to no aid from any of them. Can he assign for error any defect or irregularity in the proceeding against these other parties, such as the failure to appoint guardians *ad litem* for such of the heirs of the mortgagor or the mortgagees as are infants? For this, as we believe, is the only error in the proceedings as against them, which appears in the record, unless it be the failure to name in the warning order, the husband of one of the heirs of one of the mortgagees.

It is to be observed that Wickliffe has no interest in the mortgage debt, no interest in the question how far it may have been satisfied before the suit, or whether it might be satisfied by the sale, no interest in the question whether the purchaser shall get all the title of mortgagors and mortgagees; but an interest only that he, himself, in

WICKLIFFE
*vs*
BAILEY'S AD'R.

A party to a suit who has no common interest with the other parties, but whose interest is opposed to all his co-defendants, cannot use their names in a writ of error to reverse a decree on account of an irregularity which applies exclusively to them.

WICKLIFFE
*vs*
BAILEY's AD'R.

opposition to all these parties, shall be permitted to retain the possession, while he sets up for its protection, neither any color of title, nor such lapse of time as might give a presumptive right.

As the administrator of the mortgagees, holding the debt secured by the mortgage, is undoubtedly entitled to enforce it as a security merely, the heirs of the mortgagees are necessary parties, only for the purpose of perfecting the legal title in the purchaser, and we think it evident that Wickliffe cannot complain either that guardians were not appointed for some of them who were infants, or that the husband of one of them was not included in the warning order. He has, in fact, no title, and a traverse having been entered for the infant heirs of the mortgagees, they being non-residents as well as infants, it may be doubted whether even they are prejudiced by the failure to appoint a guardian, and whether in fact they are not in a better condition, with the benefit of the traverse, than with the answer of a guardian, and whether they could themselves, reverse the decree for the omission to appoint one, since the answer of a guardian might, perhaps, deprive them of the privilege of seven years, given to them as non-residents, for opening the decree. But this point we need not and do not decide. And as to the heirs of the mortgagor, they are necessary parties in this case; First, because there is no personal representative to contest or admit the debt. And second, because they have an equity in the land subject to the lien of the mortgage, and are thus parties in interest. And thirdly, because for the safety of the purchaser, they and such title as they may have, should be concluded by the decree. It appears that all the persons named as heirs of the mortgagor, except a son of a half sister, whose interest would be about one sixtieth of the lot, and whose death was suggested without contradiction before the trial, were either served with process or regularly proceeded against by warning order; but that one of the mortgagor's heirs is stated to have been an infant at the filing of the bill, and no guardian *ad litem* was appointed for him. We do not perceive how Wickliffe's interest in the suit or the land is affected by these irregularities, unless they

should be made the cause of prolonging his possession of the lot to which he pretends no title. The Court had, notwithstanding these irregularities, full power over the legal title conveyed by the mortgage and over the equity of redemption, and therefore. over the land itself, so far as mortgagor and mortgagee were concerned, because all persons interested in the title were before it by process or warning order.

There is no complaint against the decree by the heirs either of the mortgagor or of the mortgagee, nor by the purchaser, who, as it seems, is desirous of carrying it into effect; and we are of opinion that as the irregularities now under consideration do not affect the jurisdiction of the Court, nor its power to proceed to final decree and the execution thereof, whatever cause of reversal they may furnish to those parties whose interests may have been affected by them, they furnish no ground of complaint to Wickliffe, to whom they cannot be deemed prejudicial, and who did not object to the hearing of the cause, for the want of preparation, but as is rather to be inferred, concurred in submitting it to the Court.

The existence of the mortgage debt as alledged in the bill, is unquestioned by the defendants who have answered, and is proved against the general traverse filed for others, by the record of the judgment against the mortgagor, with an execution thereon, returned "no property," and the sales made under the decree still leave a large balance unpaid. The mortgage, therefore, was not the mere evidence of a naked legal title, but was the substantial security for a subsisting debt, and there is no such denial of the right or character in which the complainant sues, as to put that matter in issue. The suit, therefore, is in proper form, and the case one of which, as between the creditor and debtor, the mortgagor and mortgagee, the Court had undoubtedly jurisdiction. Nor is there any question as to the propriety of making the person in possession a party to the bill for foreclosure and sale. For although it is not the primary object of the suit to affect the possession, and the enforcement of a barren mortgage should not be made the pretext for throwing into Chancery the question of a disputed right of possession; yet the

WICKLIFFE
*vs*
BAILEY'S AD'R.

When the Chancellor has jurisdiction to enforce a mortgage lien, he has the power to control the possession of the land mortgaged, and place the purchaser in possession by his decree, who should be a party to the suit, if in possession at its institution.

WICKLIFFE
vs
BAILEY'S AD'R. mortgage being real, and the power and duty of the Court to enforce it as between mortgagor and mortgagee being undoubted, the consequential power of carrying out its decree by acting upon the possession, if it be such as should be deemed subordinate to the mortgage and properly controlled by it, must be regarded also, as unquestionable. This question was elaborately discussed and decided by Chancellor Kent, in the case of *Kershaw* vs *Thomas*, (4 *Johns. Chy. Rep.* 611,) and in the case of the *Commonwealth* vs *Ragsdale*, (2 *Hen. & Mun.* 8,) which was a mortgage of slaves, the Supreme Court of Virginia state the practice to be, to make a rule upon the party in possession, where he is not a party to the suit, and unless he shows a *paramount* right in himself, to order the property to be delivered to the Commissioners acting under the decree. As the decree of sale may, and if made in a proper case, should affect the right of possession, it is proper and according to our practice, necessary that the person in possession should be made a party; and the Court certainly has as much power to decree against his right of possession when he is a party, as to decide against it upon a rule subsequent to the decree, when he is not a party.

The case of *Thomas* vs *Kershaw*, *supra*, shows the right of effectuating the decree by coercing, as against a party to the suit, a change of the possession in case of the sale of land, and such is the practice in this State, as heretofore sanctioned by this Court.

*In partition and mortgage cases, where the proceeding is against the land, the Court will compel the parties to the suit, and those coming in pending the litigation, to surrender possession as it may decree.*

In the case of *McGowan* vs *Wilkins*, (1 *Page*, 121,) Chancellor Walworth says, "In partition and mortgage cases, the proceeding is directly against the land, and this Court will compel the delivery of possession as against the parties to the suit, and those who have come into possession under them pending the litigation." It is true the same Chancellor said, in *Eagle Fire Company* vs *Lent*, (6 *Page*, 638,) that "a mortgagee has no right to make one who claims adversely to the title of the mortgagor, and prior to the mortgage, a party defendant, for the purpose of trying the validity of his adverse claim of title in this Court." But this principle, if conceded, would only show that if Wickliffe, who being in posses-

sion, was properly made a defendant, had, in his answer, set up such a claim as is described, the Chancellor might or perhaps should have refused to proceed with the suit for foreclosure and sale, until the mortgage title had been established at law, or at least by the verdict of a jury, when, without transcending his proper sphere, he could have made his decree effectual by delivering the possession to the purchaser. But Wickliffe sets up no title prior to the mortgage. He does not even dispute but plainly concedes the title of Mary O. Russell, under whom the mortgagor derives title by regular conveyance, and although the bill is not as explicit as it should have been, it implies the charge that he is in possession under her title. The necessary implication from his answer is, that he took possession because he did not then know that she had conveyed the lot, and that afterwards he doubted whether she had actually received the stipulated consideration, or any consideration for the deed, the execution of which being charged to be known to him, and not denied, is admitted, and *is*, moreover, proved by the certificate of the Clerk. The possession so taken, and the motive for taking it, and the question made as to the payment of the consideration of the deed, with the accompanying details in the answer, constitute in effect, an acknowledgment of the title of M. O. Russell when her deed was made, and when he entered; and as the possession was only of ten or eleven years duration, and had been taken long after the mortgage was made and recorded, and is not attempted to be protected or justified by any matter of law or equity, which could sustain it, we are not prepared to admit that the mere assertion that it is claimed adversely to all the world, can oust the Chancellor of his jurisdiction, to enforce the mortgage by sale and delivery of possession. If this possession is intended to be justified and sustained on the ground of the consideration not having been paid to M. O. Russell, this is a matter of purely equitable consideration, and could not oust the jurisdiction; and the doubt or disbelief of Wickliffe would not raise even an equity against the deed. If as contended by Wickliffe in argument, he is to be regarded under the allegation in his answer, as a *disseisor,*

of both mortgagor and mortgagee, this admission implies the concession that there was a seizin under that title which he has interrupted; and we neither perceive nor acknowledge that the fact of such a disseizin, made long after the mortgage, and of the continuance of the disseizor's possession without pretence of legal right, and for only ten or eleven years, raise, any question upon the right of possession, which a Court of Equity cannot or should not decide, or which should obstruct the ordinary progress and consequences of a suit for foreclosure and sale. If Wickliffe had set up an equitable title, the Court of Equity was the proper tribunal for deciding upon it. If the mere assertion of adverse possession, when it was in fact, taken after the mortgage and under the title conveyed to the mortgagee, is to oust the Chancellor's jurisdiction, or to defeat or delay the enforcement of his decree, for a trial at law, the equitable remedy upon a mortgage would be almost worthless.

There is no want of jurisdiction or power to do what was done in this case; upon the plain inferences from the answer, Wickliffe occupies no better attitude than M. O. Russell would have done if she had taken possession when he did. The only question upon which Wickliffe can insist, is whether there appears upon the record to have been sufficient ground for the proceeding as against him; who being in possession, has a right to require that a better right shall be shown, before he shall be turned out, and before a decree shall be made which is to have the effect of an eviction. This question might possibly have been decided in his favor, if he had rested his cause in his answer, simply upon the claim of adverse possession; as it might then have devolved upon the complainant to show the real nature and duration of that possession; but as, notwithstanding this assertion of hostility, his answer clearly implies an acknowledgment that M. O. Russell had title and conveyed it, and that it came to the mortgagor, and that he took possession long since the mortgage, in ignorance that the title had been thus transferred, and as is implied, because he supposed it still remained in M. O. Russell, and as he had held the possession only ten or eleven years, and without color of title,

A party claiming under a mortgage cannot by bringing his bill to foreclose, against one in possession, whose title accrued before the mortgage, transfer the jurisdiction to try the title and right of possession to the Court of Chancery.

unless under the supposed equity arising from his doubts as to the payment of the price of the lot, we think the right of possession is clearly with and under the mortgage, and that the case comes within the principle on which a Court of Equity decrees against the person in possession of mortgaged property.

Wherefore, the decree of sale and the order coercing a change of possession for the effectuation of the decree, are affirmed as against Wickliffe.

*Wickliffe* for plaintiff: *Robinson & Johnson* for defendants.