**COMMONWEALTH of Kentucky, Appellant,**

v.

**E.T. KASH, Appellee.**

**COMMONWEALTH of Kentucky, Appellant,**

v.

**Rocky HIGGINS, Appellee.**

Nos. 96–CA–1214–MR, 96–CA–1215–MR.

Court of Appeals of Kentucky.

Nov. 21, 1997.

Discretionary Review Denied
June 10, 1998.

---

A.B. Chandler, III, Attorney General, Michael A. Wright, Assistant Attorney General, Frankfort, for Appellant.

Susan J. Balliet, Prospect, for Appellee Rocky Higgins.

Michael F. Eubanks, Richmond, for Appellee E.T. Kash.

Before WILHOIT, C.J.,[1] and ABRAMSON and DYCHE, JJ.

## OPINION

ABRAMSON, Judge.

The Commonwealth of Kentucky appeals an order of the Lee Circuit Court dismissing the indictments of Rocky Higgins and E.T. Kash for the offense of wrongful voter registration under KRS 119.025. Finding the circuit court erred in holding the statute unconstitutionally vague, we reverse and remand.

In February 1993, E.T. Kash was campaigning for election as the county judge executive in Lee County. In the course of the campaign, Kash actively attempted to have local residents registered to vote in the May 1993 election. While at a private home where individuals were assisted in registering to vote, Rocky Higgins signed a voter registration form. There is some indication in the record that Higgins later voted in the May 1993 election, which Kash won. In November 1994, a Lee County resident wrote a letter to the Kentucky Attorney General alleging that Higgins had been assisted in registering to vote. The letter indicated that Higgins was a convicted felon, and that Kash knew this when he assisted Higgins in registering. The Attorney General's Office directed the letter to the State Board of Elections, which contacted the Lee County Commonwealth's Attorney about initiating an investigation under KRS 117.245. In December 1994, the State Board of Elections determined that Higgins had been ineligible to vote in the election because he was a convicted felon, and that he had not had his voting rights restored through an executive pardon as required by Section 145 of the Kentucky Constitution. The investigation revealed that Higgins had been convicted of felony burglary and theft offenses in May 1987. At some point, the Attorney General's Office assumed control of the investigation.

In February 1995, a Lee County Grand Jury was convened to consider evidence against Higgins and Kash for alleged election law violations. After hearing testimony from several witnesses, the Grand Jury returned separate one-count indictments in June 1995 against Higgins and Kash for violation of KRS 119.025, a class D felony. The indictment of Higgins alleged that on or about February 25, 1993, Higgins committed the offense of wrongful registration "when he knowingly and/or fraudulently caused himself to be registered to vote when he knew he was not legally entitled to vote." Similarly, the indictment of Kash stated that on or about February 25, 1993, Kash committed the offense of wrongful registration "when he knowingly and/or fraudulently aided, abetted, counselled and/or advised Rocky L. Higgins in registering to vote when he knew that Rocky L. Higgins was not legally entitled to vote." The indictments were amended subsequently on an oral motion granted by the circuit court to substitute the word "register" for the last word "vote."

On March 1, 1996, Higgins filed a motion to dismiss the indictment on grounds that KRS 119.025 was unconstitutionally vague. At a hearing on the motion to dismiss, Kash joined in the motion and subsequently filed his own written motion and memorandum challenging the constitutionality of KRS 119.025. After receiving a written response from the Commonwealth, the circuit court issued a four-page order finding that KRS 119.025 was unconstitutionally vague and dismissing the indictments against Higgins and Kash. The Commonwealth appealed from the dismissal of each indictment.

### THE CHALLENGED STATUTE AND RELATED CONSTITUTIONAL AND STATUTORY PROVISIONS

The challenged statute, KRS 119.025, states in its entirety:

---

1. Chief Judge Wilhoit concurred in this opinion prior to his retirement effective November 15, 1997. Release of the opinion was delayed by normal administrative handling.

*Wrongful registration.*—Any person who knowingly or fraudulently causes himself to be registered in more than one (1) precinct, or to be registered more than once, or in a precinct other than the one in which he is a legal voter, or who registers under any name other than his real name, or who gives a false address, or who in any manner causes himself to be registered when he is not legally entitled to register, or who makes a false oath as to his ability to read or write, or who knowingly or fraudulently aids, abets, counsels or advises in the commission of any such act, shall be subject to the penalties prescribed for Class D felonies.

While KRS 119.025 sets out several specific acts that would constitute wrongful registration, it also contains the general phrases "who in any manner causes himself to be registered when he is not legally entitled to register . . ., or who knowingly or fraudulently aids, abets, counsels or advises in the commission of any such act. . . ." Because the facts of this case do not involve the specific examples enumerated in the statute, prosecution was based on the general language.

To fully understand the wrongful registration provision, two other statutes, KRS 116.045 and KRS 116.025, as well as Sections 145 and 147 of the Kentucky Constitution must be considered.[2] Collectively these provisions deal with the qualifications for registration and voting in the Commonwealth. Taken together these provisions reveal the close relationship between registration and voting, with registration facilitating the integrity of the voting and election process. In *Coffey v. Anderson,* Ky., 371 S.W.2d 624, 626 (1963), the Court stated that Section 145 of the Kentucky Constitution must be read *in pari materia* with Section 147 to determine the qualifications to vote. It held that "[b]y force of [Ky.] Const. § 147, registration is a qualification or condition precedent of equal dignity with the age, residence, and other qualifications in [Ky.] Const. § 145." *Id.* Registration is "the method of proof by a public record" for ascertaining and identifying qualified voters in each precinct. *See Bd. of Registration Comm'rs v. Campbell,* 251 Ky. 597, 65 S.W.2d 713, 718 (1933). As such, "it is part of the machinery of elections." *Id.*

## THE CONSTITUTIONAL CHALLENGES

 In his motion to dismiss, Higgins maintained that KRS 119.025 was unconstitu-

2. **KRS 116.045 VOTER REGISTRATION**
(1) Any person may register as a voter during the period registration is open if he possesses, or will possess on the day of the next regular election, the qualifications set forth in KRS 116.025.
**KRS 116.025 ELIGIBILITY TO VOTE**
(1) Every person who is a resident of this state and the precinct in which he offers to vote on or before the day preceding the closing of the registration books for any primary, general or special election, who possesses on the day of any election the qualifications set forth in Section 145 of the Constitution, exclusive of the durational residency requirements, who is not disqualified under that section or under any other statute, and who is registered as provided in this chapter, may vote for all officers to be elected by the people and on all public questions submitted for determination at that election, in the precinct in which he is qualified to vote. Any person who shall have been convicted of any election law offense which is a felony shall not be permitted to vote until his civil rights have been restored by executive pardon.
**Ky. Const. § 145 PERSONS ENTITLED TO VOTE**
Every citizen of the United States of the age of eighteen years who has resided in the state

one year, and in the county six months, and the precinct in which he offers to vote sixty days next preceding the election, shall be a voter in said precinct and not elsewhere but the following persons are excepted and shall not have the right to vote.
1. *Persons convicted in any court of competent jurisdiction* of treason, *or felony,* or bribery in an election, or of such high misdemeanor as the General Assembly may declare shall operate as an exclusion from the right of suffrage, but persons hereby excluded may be restored to their civil rights by executive pardon.

\* \* \* \* \* \*

(emphasis supplied).
**Ky. Const. § 147 REGISTRATION OF VOTERS**
The General Assembly shall provide by law for the registration of all persons entitled to vote in cities and towns having a population of five thousand or more; and may provide by general law for the registration of other voters in the State. Where registration is required, only persons registered shall have the right to vote. The mode of registration shall be prescribed by the General Assembly. . . . The General Assembly shall pass all necessary laws to enforce this section. . . .

tionally vague as applied to his situation. Kash argued that KRS 119.025 was facially unconstitutional for vagueness and over-breadth. The void-for-vagueness doctrine emanates from the due process provisions of the United States and Kentucky Constitutions. *Raines v. Commonwealth,* Ky.App., 731 S.W.2d 3, 4 (1987). To survive vagueness analysis a statute must provide "fair notice" of prohibited conduct and contain "reason-ably clear" guidelines to thwart "arbitrary and discriminatory" enforcement. *Smith v. Goguen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605, 611–12 (1974). The overbreadth doctrine has its source in the First Amendment of the United States Constitution and in Kentucky is applied by analogy to rights protected by our state's constitutional counterparts to the First Amendment. *Commonwealth v. Ashcraft,* Ky.App., 691 S.W.2d 229 (1985). The essence of overbreadth was summarized in *Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973):

> It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society.

■ In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the United States Supreme Court described the elements of a facial challenge to a law based on overbreadth and vagueness.

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

*Id.* at 494–95, 102 S.Ct. at 1191–92. Thus while a vagueness challenge focuses squarely on the conduct of the party before the court, the overbreadth doctrine developed to allow parties to challenge a statute drafted so broadly that it may inhibit the First Amendment rights of third parties. *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 796–801, 104 S.Ct. 2118, 2124–26, 80 L.Ed.2d 772, 781–85 (1984) ("[I]n short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.") *See also City of Houston v. Hill,* 482 U.S. 451, 458–59, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398, 410 (1987) (criminal statutes to be "scrutinized with particular care"; there must be a substantial amount of constitutionally protected conduct prohibited for overbreadth doctrine to apply, not merely the specter of a single impermissible application).

■ Kentucky courts have employed vagueness and overbreadth analysis in examining various state laws. *See, e.g., State Bd. for Elementary and Secondary Ed. v. Howard,* Ky., 834 S.W.2d 657 (1992) (holding that parts of the statute prohibiting school personnel from participating in political campaigns for school board were unconstitutionally vague and overbroad); *Chapman v. Gorman,* Ky., 839 S.W.2d 232 (1992) (rejecting vagueness and overbreadth challenges to anti-nepotism provision in Kentucky Education Reform Act). Our Supreme Court has stated that where a statute is challenged on vagueness grounds, the proper analysis is "whether a person disposed to obey the law could determine with reasonable certainty from the language used whether contemplated conduct would amount to a violation." *Commonwealth v. Foley,* Ky., 798 S.W.2d 947, 951 (1990). In *Hardin v. Commonwealth,* Ky., 573 S.W.2d 657, 660 (1978), the Court concluded that vagueness involves a

"man on the street" approach. The challenged statute must provide "fair warning" to the public and "explicit standards" for those who apply it in order to pass constitutional muster. *Id.* A challenge to a statute on the basis that it is overbroad is essentially an argument "that in an effort to control impermissible conduct, the statute also prohibits conduct which is constitutionally protected." *Commonwealth v. Ashcraft,* 691 S.W.2d at 232. *See also Commonwealth v. Foley, supra,* (statute is overbroad where it prohibits constitutionally protected conduct or allows for arbitrary enforcement).

In the case *sub judice,* the circuit court limited its ruling to the issue of vagueness, and did not address the overbreadth challenge. Kash concedes that the trial court did not reach this issue, but he argues that the statute is overbroad because it may be enforced in an arbitrary manner. We believe that on the facts of this case the issue of arbitrary enforcement must be addressed under the doctrine of vagueness rather than overbreadth. Neither Kash nor Higgins has asserted that First Amendment rights are infringed by KRS 119.025. Given United States and Kentucky Supreme Court precedent in the area of voter registration, the absence of such an assertion is not surprising. Although every citizen has a general right to vote, states have broad powers to determine the conditions under which the right of suffrage may be exercised. *Lassiter v. Northampton County Bd. of Elections,* 360 U.S. 45, 50, 79 S.Ct. 985, 989, 3 L.Ed.2d 1072, 1076 (1959). A person's previous criminal record is a factor which a state may take into consideration in determining the qualifications of voters. *Id.* at 51, 79 S.Ct. at 989–90. Thus, Kash simply cannot show that a "substantial amount of constitutionally protected conduct" is impacted by KRS 119.025. In the absence of that threshold requirement for application of the overbreadth doctrine, we turn to the void-for-vagueness challenge.

### THE VAGUENESS DOCTRINE

Unquestionably, criminal statutes must be sufficiently specific that an individual has fair notice of what conduct is forbidden. *United States v. Harriss,* 347 U.S. 612,

74 S.Ct. 808, 98 L.Ed. 989 (1954). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). *See also Hardin v. Commonwealth,* 573 S.W.2d at 660; *Commonwealth v. Foley,* 798 S.W.2d at 951. To assert a facial challenge to a statute as impermissibly vague, a complainant must show that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Hoffman Estates,* 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7 (citations omitted). Simply because a criminal statute could have been written more precisely does not mean the statute as written is unconstitutionally vague. *United States v. Powell,* 423 U.S. 87, 94, 96 S.Ct. 316, 321, 46 L.Ed.2d 228, 235 (1975). Moreover, the United States Supreme Court has consistently held that a person to whose conduct a statute clearly applies cannot "successfully challenge it for vagueness" as applied to the conduct of others. *Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. at 1191 (citing *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561–62, 41 L.Ed.2d 439, 458 (1974)).

### APPLICATION OF VAGUENESS STANDARDS TO KRS 119.025

We begin the vagueness analysis in this case with the language of the statute as seen in light of several cardinal principles of statutory construction. The primary purpose of judicial construction is to carry out the intent of the legislature. *Reed v. Greene,* Ky., 243 S.W.2d 892, 893 (1951); *Hardin Co. Fiscal Court v. Hardin Co. Bd. of Health,* Ky.App., 899 S.W.2d 859, 861 (1995). *See also* KRS 446.080. In construing a statute, the courts must consider "the intended purpose of the statute—the reason and spirit of the statute—and the mischief intended to be remedied." *City of Louisville v. Helman,*

Ky., 253 S.W.2d 598, 600 (1952). The courts should reject a construction that is "unreasonable and absurd, in preference for one that is 'reasonable, rational, sensible and intelligent'...." *Johnson v. Frankfort & C.R.R.*, 303 Ky. 256, 197 S.W.2d 432, 434 (1946) (citation omitted). In addition, the courts must construe statutes in a manner that saves their constitutionality whenever possible consistent with "reason and common sense." *Diemer v. Commonwealth, Transportation Cabinet*, Ky., 786 S.W.2d 861, 863 (1990). On the other hand, a court should not add words or cure an omission "to give constitution-ally permissible meaning where none would otherwise exist." *Id.* at 864–65. Under the doctrine of *in pari materia*, statutes having a common purpose or subject matter must be construed together. *Dieruf v. Louisville & Jefferson Co. Bd. of Health*, 304 Ky. 207, 200 S.W.2d 300, 302 (1947); *Hardin Co. Fiscal Court*, 899 S.W.2d at 862.

First, we address whether KRS 119.025 provides fair notice of what conduct is prohibited. The circuit court held that the statute was unconstitutionally vague because the language "or who in any manner causes himself to be registered when he is not legally entitled to register" was not sufficiently specific. The circuit court noted that KRS 119.025 does not state explicitly that a convicted felon cannot register to vote and that KRS 116.045(1) would lead one to believe that even a convicted felon could legally register.

We believe that the circuit court employed an improperly narrow focus in reviewing the statute. While the circuit court considered only the four corners of the challenged statute and reviewed it for comprehensive and precise language, the law does not require that all specific acts covered by a statute be listed. In *Colten v. Commonwealth*, 467 S.W.2d 374, 378 (Ky.1971), the Court indicated that a statute is not unconstitutionally vague "when it may be understood by citizens who desire to obey it." Moreover, Kentucky courts have "placed a considerable responsibility upon citizens to determine whether contemplated conduct amount[s] to a violation" of the challenged statute. *Commonwealth v. Foley*, 798 S.W.2d at 951.

"There are many crimes that are and must be broadly defined, but which are not rendered invalid by the fact that the definitions do not specify every conceivable exculpatory circumstance." *O'Leary v. Commonwealth*, Ky., 441 S.W.2d 150, 155 (1969). Certainly it is not unreasonable to expect the factors establishing "legal entitlement" to vote (or conversely disqualification from voting) to be stated in other statutes or, perhaps more logically, in provisions of the Kentucky Constitution.

While KRS 119.025 deals with registration, it is inextricably linked to the previously noted statutes and constitutional provisions regarding registration and voting. Section 145 provides that citizens who are at least eighteen years old and meet residency requirements may vote, except for "persons convicted in any court of competent jurisdiction of treason, or felony, or bribery in an election" although "persons hereby excluded may be restored to their civil rights by executive pardon." Section 147 states that the legislature "shall provide by law for the registration of all persons entitled to vote," and "where registration is required, only persons registered shall have the right to vote." These provisions clearly indicate an intent to exclude convicted felons from voting, thereby making registration by a convicted felon wrongful unless the right to vote has been restored by executive pardon. The absence of a specific reference to convicted felons in KRS 119.025 does not render that statute void for vagueness. Measured by common understanding and practices, these provisions provide sufficient notice that a convicted felon who has not had his civil rights restored should not register to vote.

Kash and Higgins argue that even if all of these provisions are considered, KRS 116.045 creates ambiguity by indicating a person may register if he *"will* possess on the day of the next regular election, the *qualifications* set forth in KRS 116.025." They contend that a convicted felon could properly register if he believed his right to vote might be restored by the date of the election. This argument may be rejected because it is based on speculation that does not apply to the facts before us. In our view,

the registrant must have a reasonable, good faith belief at the time of registration, that he will be eligible to vote by election day. Neither Higgins nor Kash contend, and there is no evidence, that either man reasonably believed that Higgins would have his civil rights restored between February 1993, when the registration occurred, and the May 1993 election. Consequently, as applied to Higgins and Kash, KRS 116.045 is not vague. In analyzing their vagueness challenge, we cannot and need not address hypothetical scenarios involving the conduct of others. *Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191–92.

Higgins and Kash further contend that the last sentence in KRS 116.025(1) creates an ambiguity that renders the registration statutes unconstitutionally vague. This sentence states: "Any person who shall have been convicted of any election law offense which is a felony shall not be permitted to vote until his civil rights have been restored by executive pardon." Kash argues this sentence conflicts with the general provision excluding felons from voting, and citing *Holbrook v. Knopf*, Ky., 847 S.W.2d 52, 55 (1992) insists the former prevails over the latter because it is more specific. This argument fails on two grounds. First, there is no conflict between the two provisions. The disqualification of persons convicted for an election law offense does not preclude disqualification of persons convicted of other felonies. Second, this argument misapplies the rules of statutory construction because a provision of the Kentucky Constitution, such as Section 145 in this case, always takes precedence over a statute. *Jefferson County v. Jefferson Co. Fiscal Court*, 273 Ky. 674, 117 S.W.2d 918 (1938).

Finally, a review of the facts of this case establishes that Higgins and Kash had "fair warning" of the illegal nature of their conduct. Higgins was a convicted felon who had not had his voting rights restored, and thereby was disqualified from voting or registering to vote. Higgins certainly knew he was a convicted felon and there was evidence that Kash was informed of this fact and yet proceeded with registration. The registration form which Kash distributed and Higgins signed states explicitly on its face that the voter's signature constitutes a verification that "you are not a convicted felon and if you have been convicted of a felony your civil rights have been restored." Clearly, Higgins and Kash could determine with reasonable certainty by referring to the registration form that their conduct was illegal.

Finally, we consider the potential for arbitrary and discriminatory enforcement. Kash argues KRS 119.025 is unconstitutionally vague because it could apply to numerous situations such as asking someone if they would like to register to vote, transporting a person so that they can register, encouraging someone to register to vote, and telling someone they should vote because it is their duty as an American. He contends the statute invites "arbitrary," "selective," and "trivial" prosecution. *Commonwealth v. Foley*, 798 S.W.2d at 953.

The arbitrary enforcement prong of the vagueness standard requires the legislature to provide "minimal guidelines" to prevent a "standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Kolender v. Lawson*, 461 U.S. at 358, 103 S.Ct. at 1858 (quoting *Smith v. Goguen, supra*, 415 U.S. at 575, 94 S.Ct. at 1248). We believe KRS 119.025, read in conjunction with the other two statutes and the two cited provisions of the Kentucky Constitution, provides sufficient guidelines to govern the conduct of law enforcement personnel. It limits prosecution to situations involving the registration of persons ineligible to vote. Such ineligibility is readily determinable by reference to the law and the registration form itself. Moreover, the statute encompasses only conduct which is engaged in "knowingly" or "fraudulently;" inadvertence or ignorance will not suffice. This scienter requirement further restricts the range of conduct susceptible to prosecution. Finally, we cannot say the prosecution of Higgins and Kash, given the alleged evidence in the record, is patently arbitrary or discriminatory.

In conclusion, the wrongful registration statute is sufficiently definite that, in accordance with *Foley*, an ordinary person dis-

posed to obey the law could determine with reasonable certainty whether the contemplated conduct would amount to a violation. KRS 119.025 survives a vagueness challenge because it provides adequate "fair warning" to individuals such as Higgins and Kash, and it also contains the minimal guidelines necessary to preclude arbitrary and discriminatory law enforcement.

For the foregoing reasons, the decision of the Lee Circuit Court is reversed, and this matter is remanded for further proceedings in accordance with this opinion.

All concur.