RENDERED:  JANUARY 7, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1296-MR

DEZMON MOORE                                                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.           HONORABLE OLU A. STEVENS, JUDGE
ACTION NO. 18-CI-003972


LOUISVILLE/JEFFERSON COUNTY
METROPOLITAN GOVERNMENT;
AND LOUISVILLE METRO
POLICE MERIT BOARD                                                     APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Dezmon Moore, a former police officer with the

Louisville Metro Police Department (LMPD), appeals his dismissal by the

Louisville/Jefferson County Metropolitan Government (Metro) through the

Louisville Metro Police Merit Board (Board) (collectively, appellees) as affirmed

by the Jefferson Circuit Court. Moore argues that his dismissal was erroneous, primarily because the Board considered records which were expunged and considered recorded statements in violation of his right to confrontation. While Moore has established error by the Board in allowing consideration of expunged materials and the admission of statements by persons who could have been called to testify, we affirm because these errors were ultimately harmless as there was an adequate basis for his dismissal given the overwhelming evidence supporting the two substantiated grounds for dismissal.

## I.     FACTS AND PROCEDURAL HISTORY

On May 24, 2017, the Chief of Police, Steve Conrad, terminated Moore's employment on the basis of three incidents: (1) a September 4, 2016 incident of domestic violence against his wife which resulted in an emergency protective order (EPO) which was dismissed by an agreed order and an assault IV-domestic violence charge which was ultimately dismissed with prejudice and expunged on March 29, 2017 (the September incident); (2) an October 6, 2016 incident in which Moore was arrested for violating a no-contact order with his wife, which ultimately resulted in a plea agreement in which Moore pled guilty to violation of the conditions of release with 180 days conditionally discharged for two years (the October incident); and (3) an April 16, 2017 incident in which

Moore violated the no-contact order and was charged with harassment (the April incident).

Moore sought review before the Board and had a four-day trial. He objected to the Board's considering the LMPD's proposed exhibits which included the entirety of the criminal investigative file on the September incident and the associated criminal charge as the crime was expunged. The matter was taken under submission and the Board members received the exhibits. The Board allowed the LMPD to introduce testimony about the investigation of the domestic violence call, statements and photographs taken as part of the investigation, and the discussion of Moore's arrest. Moore objected to the admission of exhibits and records of the arrest and related criminal proceedings, arguing that the expungements precluded their admission. He also objected to the admission of statements collected as part of the criminal investigation as violating his right to confrontation and cross-examination. The Board concluded that the records and statements were admissible, subject to an admonition that, without more, they could not prove LMPD's case. In addition, LMPD introduced court filings and orders regarding the two domestic violence cases, both of which were ultimately dismissed.

During the hearing, the Board heard testimony from investigating police officers about what they observed and what further investigation revealed

when they responded to the September incident, the October incident, and the April incident. LMPD also introduced witness statements collected by these officers during their investigations. Moore's ex-wife also testified about what occurred during all three incidents. Moore denied that he had ever committed domestic violence against his ex-wife in the September incident, but admitted to violating the no-contact order during the October incident. On the other hand, Moore denied violating the no-contact order during the April incident.

Following the conclusion of the hearing, the Board met in an executive session and when the Board returned to regular session, a board member made a motion that "based upon the totality of the circumstances, which include findings that the charges were not all proven, but that some were, the Board upholds the decision of the Chief." The Board then voted six-to-one to uphold the termination and requested that board counsel draft the written order. The lengthy written decision made numerous factual findings and ultimately concluded that the September incident was not proven, but the October incident and April incidents were proven and established that Moore failed to be obedient to rules and regulations pursuant to Louisville Metro Police Department, Standard Operating Procedure 5.1.2.

Moore sought review before the circuit court, which affirmed the Board's decision. This appeal followed. Additional facts will be set forth below as necessary.

## II.    STANDARD OF REVIEW

Kentucky Revised Statutes (KRS) 67C.323(1) sets out the procedure for the Board's review of the Chief's dismissal of a non-probationary officer. Any person aggrieved by the Board's decision may appeal to the circuit court of the county in which the Board meets. KRS 67C.323(3)(a). The circuit court's judgment in review of such matters is subject to review by this Court. KRS 67C.323(3)(b).

"[J]udicial review of administrative action is concerned with the question of arbitrariness." *Kaelin v. City of Louisville*, 643 S.W.2d 590, 591 (Ky. 1982). The scope of appellate review for arbitrariness extends to "(1) action in excess of granted powers, (2) lack of procedural due process, and (3) lack of substantial evidentiary support[.]" *American Beauty Homes Corp. v. Louisville & Jefferson County Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964); *see also Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 467 (Ky. 2005).

The circuit court's standard of review for the Board's action is modified *de novo*, allowing the court to review the record, briefs, and any other

-5-

evidence relevant to the specific, limited issues on appeal. *Crouch v. Jefferson Cty., Kentucky Police Merit Bd.*, 773 S.W.2d 461, 464 (Ky. 1988). Such review does not involve a retrial of the merits. *Id.* However, "[a] reviewing court does not have the authority to review the penalty determination of the civil service board and does not have the power to reverse the disciplinary action taken by the Board." *City of Louisville By and Through Kuster v. Milligan*, 798 S.W.2d 454, 458 (Ky. 1990). This Court's review is governed by the clearly erroneous standard set out in Kentucky Rules of Civil Procedure (CR) 52.01. The circuit court's findings shall not be set aside unless they are not supported by substantial evidence. *Stallins v. City of Madisonville*, 707 S.W.2d 349, 350 (Ky.App. 1986). Of course, appellate review of questions of law remains *de novo*. *Aubrey v. Office of Attorney General*, 994 S.W.2d 516, 519 (Ky.App. 1998).

## III.   ISSUES

Moore raises the following allegations of error:  (1) the Board erred by failing to exclude expunged material, including the transcribed witness statements; (2) the circuit court erred by finding that the admission of expunged materials was harmless; (3) the Board violated his right to confront witnesses against him by permitting the admission of transcribed witness statements; (4) the Board arbitrarily upheld the termination despite not sustaining the charges based on the September incident; and (5) the Board arbitrarily upheld the Chief's

decision to terminate him when it was based upon one arrest and criminal charges rather than the establishment of any crime.

## IV.   ADMISSION OF EXPUNGED MATERIALS

Moore primarily argues that the Board erred by admitting or considering any records or materials relating to the criminal charges which were later expunged.  Consequently, we must first address how the expungement statutes relate to what can and cannot be considered in an employment disciplinary matter.  This requires interpreting the relevant statutory language of KRS 431.076(6), which provides as follows:

> After the expungement, the proceedings in the matter shall be deemed never to have occurred.  The court and other agencies shall delete or remove the records from their computer systems so that any official state-performed background check will indicate that the records do not exist.  The court and other agencies shall reply to any inquiry that no record exists on the matter.  The person whose record is expunged shall not have to disclose the fact of the record or any matter relating thereto on an application for employment, credit, or other type of application.

While there are several Kentucky cases regarding whether defendants fit within the class of persons eligible for expungement, there is an absence of opinions analyzing what exactly is expunged.  Therefore, to determine this matter, we start by analyzing the interpretation to be given to the statutory language.

"The primary purpose of judicial construction is to carry out the intent of the legislature." *Commonwealth v. Kash*, 967 S.W.2d 37, 43 (Ky.App. 1997). "The most logical and effective manner by which to determine the intent of the legislature is simply to analyze the plain meaning of the statutory language: '[r]esort must be had first to the words, which are decisive if they are clear.'" *Stephenson v. Woodward*, 182 S.W.3d 162, 169-70 (Ky. 2005) (quoting *Gateway Construction Company v. Wallbaum*, 356 S.W.2d 247, 249 (Ky. 1962)). "[A] court may not insert language to arrive at a meaning different from that created by the stated language in a statute." *Peter Garrett Gunsmith, Inc. v. City of Dayton*, 98 S.W.3d 517, 520 (Ky.App. 2002). Additionally, "[i]n construing a statute, the courts must consider 'the intended purpose of the statute – the reason and spirit of the statute – and the mischief intended to be remedied.'" *Kash*, 967 S.W.2d at 43-44 (quoting *City of Louisville v. Helman*, 253 S.W.2d 598, 600 (Ky. 1952)).

The first matter to be considered is what must be expunged. We interpret the language in KRS 431.076(6) that "[a]fter the expungement, the proceedings in the matter shall be deemed never to have occurred" as meaning "criminal proceedings" as the records that are to be eliminated in KRS 431.076(4) are those "relating to the arrest, charge, or other matters arising out of the arrest or charge[.]" What is deemed to have never occurred is the criminal process itself, beginning with the arrest and continuing to the conclusion of the entire criminal

-8-

process, which resulted in various records of such process, rather than the actions or conduct which resulted in the arrest and ongoing criminal process.

This interpretation is consistent with the Kentucky Rules of Criminal Procedure (RCr), which govern procedure and practice in all criminal proceedings beginning with the criminal complaint and continuing through the appellate process. RCr 1.02(2). This interpretation is also consistent with the purpose of the expungement statute, which clearly states the records of the court and other agencies shall be deleted or removed from their computer systems "so that any official state-performed background check will indicate that the records do not exist" and inquiries as to such a record shall be "no record exists" and that "[t]he person whose record is expunged shall not have to disclose the fact of the record or any matter relating thereto on an application for employment, credit, or other type of application." KRS 431.076(6).[1]

---

[1] *See generally* JAMES L. BUCHWALTER, 37 CAUSES OF ACTION 2D 615 § 2 (2021) (citation omitted) (explaining expungement is to "clear the public record of entries so that a person who is entitled to expunction may omit reference to the charges to potential employers and others, . . . ensure confidentiality" and "protect . . . from . . . potential public stigma"); ANNA KESSLER, EXCAVATING EXPUNGEMENT LAW: A COMPREHENSIVE APPROACH, 87 Temp. L. Rev. 403, 409 (2015) (footnote omitted) (explaining "expungement aims to restore individuals with criminal records to their former legal status."); and GEORGE L. BLUM, J.D., JUDICIAL EXPUNCTION OF CRIMINAL RECORD OF CONVICTED ADULT UNDER STATUTE, 70 A.L.R.6th 1 (originally published in 2011) (explaining expungement allows for the person whose record is expunged to omit references to the charges to potential employers and prevents a record check from disclosing the expunged record).

The appellees argue that expunged matters properly may be considered by the Police Chief and the Board because these matters would not be disseminated to the public as they were confined to the disciplinary investigation. We agree with Moore that the specific records to be expunged under our expungement statute cannot be exempted from expungement by being placed in a personnel file. Rather, KRS 431.076(4) plainly requires the removal of "all criminal records in the custody of the court and any criminal records in the custody of any other agency or official, including law enforcement records[.]"

The appellees further argue that the Board was justified in considering expunged materials. The appellees point to the Louisville Metro Police Board Hearing Procedure § 9.2, which states, "[t]he Chief shall have the burden of going forward with the evidence and presenting such evidence that he/she considered in determining the disciplinary action under review." In the event of a conflict between a statute on the one hand and an ordinance or regulation on the other hand, the statute is superior and must be followed. *See Commonwealth v. Do, Inc.*, 674 S.W.2d 519, 522 (Ky. 1984); and *Louisville & N. R. Co. v. Commonwealth for Use and Benefit of City of Covington*, 488 S.W.2d 329, 330 (Ky. 1972). As a result, the provisions of KRS 431.076(6) control over contrary provisions in the Board's hearing procedures.

The appropriate way to reconcile the expungement statute with the hearing procedures is to redact any expunged materials which the Chief of Police relied upon prior to submission of the matter to the Board.[2]  In the case of the actual records that should have been eliminated, they should fully be redacted.  In this case, however, the Board allowed admission of arrest records and court records relating to the expunged charges.  We must conclude that this was clear error.

On the other hand, the investigatory records and witness statements arising from an arrest and criminal prosecution fall into a grey area under the expungement statute.  These records clearly arise out of the arrest or charges subject to expungement.  But these records typically are not disclosed as part of an official state-performed background check.  Moreover, there is a distinction between the judicial and law enforcement records of the criminal proceedings and the underlying acts which provided the factual basis for the criminal proceedings which were later expunged.  These underlying acts do *not* constitute a "proceeding" which can be expunged, for these acts are not part of the criminal process.

---

[2] We note that the expungement order was entered on March 29, 2017, prior to the Chief's decision on termination but while the matter was pending before him.  Our decision in this matter relates only to the Board's consideration of the expunged materials.

Therefore, witnesses who have independent and personal knowledge of what occurred and those who investigated its aftermath are not thereby prevented from sharing their personal observations. This information would exist whether or not a person was ultimately arrested or charged for such conduct.[3] Likewise, the investigatory records containing the statements of witnesses to the underlying events remain admissible despite the expungement, although they may be excluded on other grounds. Furthermore, civil proceedings are not subject to expungement even if they are related to the criminal matter that has been expunged. Thus, the Board could properly consider materials relating to the

---

[3] In interpreting similar expungement statutes, several of our sister courts have likewise concluded that evidence of the underlying conduct is admissible in administrative disciplinary actions even after the criminal charges are expunged. *See Wright v. Tennessee Peace Officer Standards and Training Comm'n*, 277 S.W.3d 1, 13 (Tenn. Ct. App. 2008); *Walton v. Turlington*, 444 So. 2d 1082, 1084 (Fla. Dist. Ct. App. 1984); *In re Jarman*, 2015 S.D. 8, ¶¶ 11-13, 860 N.W.2d 1, 6-7 (2015); *Ligon v. Davis*, 2012 Ark. 440, 6-8, 424 S.W.3d 863, 867-68 (2012); *Texas Educ. Agency v. T.F.G.*, 295 S.W.3d 398, 403 (Tex. App. 2009); *In re Meaden*, 902 A.2d 802, 811-12 (D.C. 2006); *Commonwealth v. Butler*, 448 Pa. Super. 582, 587-88, 672 A.2d 806, 809-10 (1996); *Dubuclet v. Division of Employment Sec. of Dept. of Labor*, 483 So.2d 1183, 1185 (La. Ct. App. 1986); *State v. Morowitz*, 200 Conn. 440, 451, 512 A.2d 175, 182 (1986); and *Tate v. Board of Educ. of Kent County*, 61 Md. App. 145, 150-51, 485 A.2d 688, 690-91 (Md. Ct. Spec. App. 1985). *See also* 24 C.J.S. *Criminal Procedure and Rights of Accused* § 2173 (2021) (noting that expungement does not insulate a person "from the consequences of his or her prior actions" or "preclude witnesses who have knowledge independent . . . from testifying."); 21A AM. JUR. 2d *Criminal Law* § 1192 (2021) (footnote omitted) (explaining that while "[a]n expungement removes all records relating to an arrest, indictment, trial, and finding of guilt . . . it does not however, expunge the underlying facts leading to legal actions, or erase the underlying conduct or behavior."); and CLAY CALVERT & JERRY BRUNO, WHEN CLEANSING CRIMINAL HISTORY CLASHES WITH THE FIRST AMENDMENT AND ONLINE JOURNALISM: ARE EXPUNGEMENT STATUTES IRRELEVANT IN THE DIGITAL AGE?, 19 CommLaw Conspectus 123, 135 (2010) (footnote omitted) (explaining "journalists gather and report facts – facts about arrests, charges, pleas and convictions. Expungement laws seek to erase those facts. The facts and corresponding events from which they arise simply do not disappear into the ether because a judge issues an expunction order.").

domestic violence petition, even though the first action was voluntarily dismissed, and the second action was denied.

In this case, both Moore and his ex-wife testified concerning the underlying circumstances. In addition, the investigating officers testified about what they learned as part of the investigatory process, including what the officers observed at the scene and the statements they took from witnesses. The officers' testimony provided an independent foundation for admission of the witness statements notwithstanding the expungement of the criminal and arrest records. While there may be other issues relating to admission of the witness statements, we conclude that the expungement statute did not preclude their admission in this administrative proceeding.

## V.    HARMLESS ERROR

Like the circuit court, we conclude that the Board erred in considering the expunged records of the criminal proceedings but did not err in considering witness statements collected during the investigation of those criminal matters. Moore argues that the Board's consideration of expunged materials tainted the entire process, rendering the result inherently unreasonable. As a result, he maintains that the Board's error cannot be considered harmless.

We disagree with Moore that the Board's consideration of such matters requires reversal of his dismissal. Instead, we must consider whether the presence of the expunged material caused harm to Moore. CR 61.01 provides that:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Therefore, when improper evidence is admitted, it must be considered whether this error had a prejudicial effect in order to grant relief. *Wells v. Commonwealth*, 206 S.W.3d 332, 334 (Ky. 2006). Furthermore, the "residuum rule" sets out that the "findings of an administrative agency will be upheld despite its partial reliance upon incompetent evidence if it also had before it competent evidence which by itself would have been legally sufficient to support the findings." *Miller v. Kentucky Unemployment Ins. Comm'n*, 425 S.W.3d 92, 99 (Ky.App. 2013) (quoting *Big Sandy Community Action Program v. Chaffins*, 502 S.W.2d 526, 530 (Ky. 1973)). In other words, this Court will affirm a finding of fact only if the competent evidence before the tribunal constitutes substantial

evidence.  *Drummond v. Todd Cty. Bd. of Educ.*, 349 S.W.3d 316, 321 (Ky.App. 2011).

When the only evidence to support an employment action is a criminal matter that is later expunged, the employment action cannot stand.  *See McNabb v. Kentucky Educ. Professional Standards Bd.*, No. 2013-CA-000601-MR, 2015 WL 5096007, at *4-8 (Ky.App. Aug. 28, 2015) (unpublished).  *See also Warren County School Dist. of Warren County v. Carlson*, 53 Pa. Cmwlth. 568, 574-75, 418 A.2d 810, 813 (1980).  During the four-day trial in this case, LMPD presented sufficient and competent testimony to support the Board's decision to uphold the dismissal based upon the October incident and the April incident.  The expunged evidence primarily related to the September incident, which the Board did not sustain as a basis for the dismissal.  Therefore, we agree with the circuit court that the admission of the expunged evidence was harmless.

## VI.  DUE PROCESS

Moore next argues reversal is warranted because he was denied his right to confront and cross-examine witnesses through the admission of witness statements where the police department failed to call those witnesses to testify.  He first contends that the witness statements violated his rights under the Confrontation Clause in the Sixth Amendment.  However, the Sixth Amendment

does not apply to civil cases. *Cabinet for Health and Family Servs. v. A.G.G.*, 190 S.W.3d 338, 345 (Ky. 2006). Rather,

> [a] civil litigant's right of confrontation and cross-examination is grounded in the Due Process Clauses of the Fifth and Fourteenth Amendments. . . . However, confrontation and cross-examination are not rights universally applicable to civil proceedings. . . . The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Due process requires only that the evidence be "reliable[.]"

*Id.* at 345-46 (citations omitted).

In the alternative, Moore cites to KRS 67C.325, which states that "[p]rocedural due process shall be afforded to any police officer brought before the board. The officer shall be given a prompt hearing by the board, have an opportunity to confront his or her accusers, and have the privilege of presenting the board with evidence." He argues that his due process rights under the statute necessarily include the right to confront and cross-examine the witnesses against him. Since the witness statements were not subject to cross-examination, Moore contends that the Board's reliance on these statements violated his due process rights.

In response, the appellees argue that the introduction of the statements did not deprive Moore of any right to confront witnesses against him because he was free to subpoena the witnesses and question them before the Board. This

Court suggested as much in *Ca'Mel v. Louisville Metro/Jefferson Cty. Metro. Gov't Police Dep't*, No. 2013-CA-001988-MR, 2015 WL 226088 (Ky.App. Jan. 16, 2015) (unpublished), which noted that the terminated officer's rights were sufficiently protected because she was free to subpoena the witnesses if she believed that further questioning was warranted. *Id.* at *9. However, the panel in *Ca'Mel* did not consider or address the application of KRS 67C.325 to the officer's rights.

KRS 67C.325 clearly directs that an officer brought before the Board shall "have an opportunity to confront his or her accusers[.]" We believe that our General Assembly determined to give police officers the right to confrontation in any hearing before the Board. Furthermore, the right to cross-examination of witnesses in disciplinary hearings is memorialized in the collective bargaining agreement between Metro and the police union.[4] Therefore, on this basis, the onus was on the police department rather than on Moore to call witnesses instead of simply relying on their previous statements.

Nevertheless, the Board's denial of due process is also subject to a harmless error analysis. In a similar disciplinary action, *Shaw v.*

---

[4] *See* "Collective Bargaining Agreement by and between Louisville/Jefferson County Metro Government and River City Fraternal Order of Police Lodge # 614," Article 17, Section 6 A(vii) (Jul. 3, 2013). The terms of the collective bargaining agreement are enforceable through KRS 67C.400 *et. seq.*

-17-

*Louisville/Jefferson Cty. Metro. Gov't. Acting through Its Police Department*, No. 2017-CA-000867-MR, 2018 WL 3954278 (Ky.App. Aug. 17, 2018) (unpublished), the Court declined to decide if the officer's right to confront witnesses was violated. This Court instead determined that any error was harmless as it did not affect the officer's substantial rights under CR 61.01. *Id*. at *4.

In this case, there was substantial witness testimony to support the Board's findings as to the October incident and April incident. The Board appropriately subjected its consideration of the statements to an admonition that, without more, they could not prove LMPD's case.

Moreover, Moore admitted to violating the no-contact order during the October incident, to which he pled guilty. The witness statements concerning the April statement were largely corroborative of his ex-wife's testimony. In addition, the Board did not reference or rely upon any evidence contained in the witness statements in making its factual findings. Moore was able to confront and cross-examine the witnesses that did testify. Finally, Moore does not explain how the failure to obtain the direct testimony of the witnesses made any difference to the eventual result the Board reached. Therefore, we are confident that any failure to exclude these statements was harmless.

## VII. THE BOARD'S DECISION TO UPHOLD THE TERMINATION BASED ON THE OCTOBER AND APRIL INCIDENTS ALONE

As previously noted, the Chief determined that Moore should be terminated based on the September, October, and April incidents. Moore takes the position that, once the Board found that the September incident was not sustained, the remaining charges would not have warranted termination. But as the circuit noted, a reviewing court does not have the authority to review the Board's penalty determination. *Milligan*, 798 S.W.2d at 458. Since the Board determined that the October and April incidents warranted Moore's termination, we are not at liberty to disturb that finding.

## VIII. SUFFICIENCY OF THE EVIDENCE

Finally, Moore asserts that the Board arbitrarily upheld the Chief's decision to terminate him based upon one arrest and criminal charges rather than the establishment of any crime. Since we have addressed the sufficiency of the evidence above, we will not belabor our analysis here. It suffices to say that there was substantial, competent evidence to support the Board's findings that Moore violated the no-contact orders during the October and the April incidents.

As noted above, the Board determined that termination was not warranted based on the September incident because the underlying allegations of domestic violence were not sustained. The family court reached much the same conclusions in denying the second domestic violence order. But the family court

-19-

emphasized it was not condoning Moore's behavior or finding that Moore did not violate court orders. The family court's decision was based on its conclusion that Moore's ex-wife failed to prove the statutory definition of domestic violence. The Board reached a similar conclusion.

However, Moore admitted that his conduct during the October incident violated the no-contact order. His ex-wife testified to the incident and provided a recording of their interactions. Moore denied violating the no-contact order during the April incident. However, the Board found his ex-wife's testimony to be more credible and sustained the charge. Such credibility determinations are plainly within the Board's authority. Even if his behavior was not criminal, Moore's actions were in violation of court orders and failed to comply with the LMPD's Standard Operating Procedures. Therefore, we conclude that the Board's findings were supported by substantial evidence, and that its decision to terminate his employment was not arbitrary.

## IX. CONCLUSION

Accordingly, we affirm the judgment of the Jefferson Circuit Court affirming the Board's decision to terminate Moore.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David Leightty
Louisville, Kentucky

Oral Argument for Appellant:
David Leightty

BRIEF FOR APPELLEE
LOUISVILLE/JEFFERSON
COUNTY METROPOLITAN
GOVERNMENT:

Mitchel T. Denham
Erin M. Shaugnessy
Louisville, Kentucky

Oral Argument for Metro:
Mitchel T. Denham

BRIEF FOR APPELLEE
LOUISVILLE METRO POLICE
MERIT BOARD:

Mark W. Dobbins
Kathleen M.W. Schoen
Louisville, Kentucky

Oral Argument for Merit Board:
Mark W. Dobbins