Raymond WILFONG, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2002–CA–000535–MR.

Court of Appeals of Kentucky.

Dec. 10, 2004.

Discretionary Review Denied by
Supreme Court Nov. 16, 2005.

Dennis Stutsman, Frankfort, KY, for appellant.

Albert B. Chandler III, Attorney General, Brian T. Judy, Assistant Attorney General, Frankfort, KY, for appellee.

Before JOHNSON, MINTON, and TACKETT, Judges.

## OPINION

JOHNSON, Judge.

Raymond Wilfong has appealed from the judgment and sentence of the Meade Circuit Court entered on March 12, 2002, which sentenced him to one-year imprisonment on his conviction for rape in the third

degree[1] and a subsequent three year period of conditional discharge as required by KRS 532.043.[2] Having concluded that KRS 532.043 does not violate the separation of powers doctrine and that the conditions of Wilfong's conditional discharge as of this time have not deprived him of his right to due process, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 7, 2001, a Meade County grand jury indicted Wilfong on one felony count of incest[3] and one felony count of rape in the third degree for having sexual intercourse with his mentally retarded, 20–year–old stepdaughter. On February 20, 2002, before he actually pled guilty to any charge, Wilfong filed a motion requesting the trial court to enter an order prohibiting the Department of Corrections from imposing the post-incarceration, three-year conditional discharge term required under KRS 532.043. Wilfong maintained the statute violated the separation of powers doctrine, the right to jury sentencing, and the right to access to the courts.

On February 21, 2002, pursuant to a plea agreement with the Commonwealth which recommended a prison sentence of one year, Wilfong entered a plea of guilty under *North Carolina v. Alford*,[4] to one count of rape in the third degree. The incest charge was dismissed. During the guilty plea hearing, the parties discussed Wilfong's motion challenging KRS 532.043, and the Commonwealth was allowed additional time to submit a written response to the motion pending final sentencing.[5]

---

1. Kentucky Revised Statutes (KRS) 510.060.

2. KRS 532.043 provides as follows:
 (1) In addition to the penalties authorized by law, any person convicted of, pleading guilty to, or entering an Alford plea to a felony offense under KRS Chapter 510, KRS 529.030, 530.020, 530.064, 531.310 or 531.320 shall be subject to a period of conditional discharge following release from:
 (a) Incarceration upon expiration of sentence; or
 (b) Completion of parole.
 (2) The period of conditional discharge shall be three (3) years.
 (3) During the period of conditional discharge, the defendant shall:
 (a) Be subject to all orders specified by the Department of Corrections; and
 (b) Comply with all education, treatment, testing, or combination thereof required by the Department of Corrections.
 (4) Persons under conditional discharge pursuant to this section shall be subject to the supervision of the Division of Probation and Parole.
 (5) If a person violates a provision specified in subsection (3) of this section, the violation shall be reported in writing to the Commonwealth's attorney in the county of conviction. The Commonwealth's attorney may petition the court to revoke the defendant's conditional discharge and reincarcerate the defendant as set forth in KRS 532.060.
 (6) The provisions of this section shall apply only to persons convicted, pleading guilty, or entering an Alford plea after July 15, 1998.
 Further, KRS 532.060(3) provides as follows: For any felony specified in KRS Chapter 510, KRS 530.020, 530.064, or 531.310, the sentence shall include an additional three (3) year period of conditional discharge which shall be added to the maximum sentence rendered for the offense. During this period of conditional discharge, if a defendant violates the provisions of conditional discharge, the defendant may be reincarcerated for:
 (a) The remaining period of his initial sentence, if any is remaining; and
 (b) The entire period of conditional discharge, or if the initial sentence has been served, for the remaining period of conditional discharge.

3. KRS 530.020.

4. 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

5. Wilfong notified the Attorney General of the constitutional challenge pursuant to Kentucky Rules of Civil Procedure (CR) 24.03 and KRS 418.075(1), but the Attorney General declined to respond.

At the final sentencing hearing conducted on March 7, 2002, the trial court denied Wilfong's motion, although the judge expressed reservations about the statute. The trial court sentenced Wilfong to prison for one year, plus a three-year period of conditional discharge following his release from incarceration upon expiration of his sentence or completion of parole. This appeal followed.

We begin our analysis by noting that acts of the General Assembly carry a presumption of constitutionality.[6] A statute will not be invalidated as unconstitutional unless it clearly, unequivocally, and completely violates provisions of the constitution.[7] "Moreover, the Commonwealth does not bear the burden of establishing the constitutionality of a statute, rather '[t]he one who questions the validity of an act bears the burden to sustain such a contention.'"[8] The issue of whether a statute is unconstitutional is a question of law subject to de novo review.[9]

## II. SEPARATION OF POWERS DOCTRINE

### A. Infringement on Judicial discretion

First, Wilfong alleges that KRS 532.043 violates the separation of powers doctrine by infringing upon the judiciary's duty to administer justice because it places unreasonable restrictions on the court's exercise of discretion. He notes that unlike most sentencing statutes, which provide minimum and maximum terms and permit the exercise of discretion within a range of punishment, KRS 532.043 removes all discretion from the trial court by imposing a three-year mandatory conditional discharge.

The separation of powers doctrine precludes each of the three branches of government from encroaching upon the domain of the other two branches.[10] Section 27[11] of the Kentucky Constitution creates three distinct branches of government and Section 28[12] precludes one branch from exercising any power properly belonging to either of the other two branches. Section 116[13] reserves to the Supreme Court the power to prescribe rules of practice and procedure for the Court of Justice.[14]

---

6. *Martinez v. Commonwealth*, Ky., 72 S.W.3d 581, 584 (2002).

7. *Cornelison v. Commonwealth*, Ky., 52 S.W.3d 570, 572 (2001).

8. *Cornelison*, 52 S.W.3d at 572–73 (quoting *Stephens v. State Farm Mutual Auto Insurance Co.*, Ky., 894 S.W.2d 624, 626 (1995)).

9. *United States v. Layne*, 324 F.3d 464, 471 (6th Cir.2003)(stating that constitutional challenges to sentencing are legal issues to be reviewed de novo); *Moore v. Ward*, Ky., 377 S.W.2d 881, 883 (1964).

10. *See, e.g., Loving v. United States*, 517 U.S. 748, 757, 116 S.Ct. 1737, 1743, 135 L.Ed.2d 36 (1996); and *Manns v. Commonwealth*, Ky., 80 S.W.3d 439 (2002).

11. "The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

12. "No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted."

13. "The Supreme Court shall have the power to prescribe rules governing its appellate jurisdiction, rules for the appointment of commissioners and other court personnel, and rules of practice and procedure for the Court of Justice. The Supreme Court shall, by rule, govern admission to the bar and the discipline of members of the bar."

14. *See generally Legislative Research Commission By and Through Prather v. Brown*, Ky., 664 S.W.2d 907, 911 (1984).

■ The legislature, rather than the judiciary, designates the elements of criminal conduct and the penalty for crimes.[15] The legislature is vested with the power to prescribe punishment for crimes and the judiciary's role is to impose sentences within the statutory limits prescribed by the legislature.[16] The legislature has the exclusive authority to establish the punishment for crimes subject only to substantive constitutional restrictions such as due process, equal protection, ex post facto or cruel and unusual punishment.[17] Consequently, we reject Wilfong's assertion that the General Assembly's enactment in KRS 532.043 of the specific penalty of a mandatory three-year conditional discharge violated the separation of powers doctrine by infringing upon the judiciary's duty to administer justice.

■ Similarly, we reject Wilfong's contention that the legislature unconstitutionally usurped judicial functions by eliminating the exercise of discretion by the trial court in fixing a sentence. While conceding that the legislature may restrict judicial discretion within a sentencing term range, Wilfong argues that eliminating such discretion entirely is forbidden. However, this argument is contrary to the plenary power of the legislature to set criminal penalties. "The legislature's discretion necessarily includes the power to prescribe mandatory sentences, even if these mandatory sentences restrict the judiciary's discretion for imposing sentences."[18] The courts have no authority to impose a sentence contrary to that authorized by the legislature.[19]

■ Furthermore, there is no constitutional right to individual sentencing based on the exercise of judicial discretion. In *Chapman v. United States*,[20] the Supreme Court of the United States rejected the argument that the legislature could not eliminate discretionary sentencing.

> Such a sentencing scheme—not considering individual degrees of culpability—would clearly be constitutional. *Congress has the power to define criminal punishments without giving the courts any sentencing discretion.* Determinate sentences were found in this country's penal codes from its inception and some have remained until the present. A sentencing scheme providing for "*individualized sentences rests not on constitutional commands, but on public*

15. *See Arroyo v. United States*, 359 U.S. 419, 424, 79 S.Ct. 864, 867, 3 L.Ed.2d 915 (1959)(stating that " '[i]t is the legislature, not the Court, which is to define a crime, and ordain its punishment' " (quoting *United States v. Wiltberger*, 5 Wheat. 76, 18 U.S. 76, 95, 5 L.Ed. 37 (1820))); *Cornelison*, 52 S.W.3d at 573 (stating that "[t]he discretion to define the level of harm and the appropriate punishment is within the purview of the Legislature, not this Court"); and *Mullins v. Commonwealth*, Ky.App., 956 S.W.2d 222, 223 (1997)(stating that "the legislature has the power to designate what is a crime and the sentences for violations thereof").

16. *State v. Schwartz*, 628 N.W.2d 134, 139 (Minn.2001); *State v. Horn*, 226 Wis.2d 637, 594 N.W.2d 772, 777 (1999).

17. *Workman v. Commonwealth*, Ky., 429 S.W.2d 374, 377 (1968)(stating what constitutes adequate punishment is reserved to the legislature as long as it is not violative of the cruel and unusual punishment provision of the Constitution).

18. *People v. Miller*, 202 Ill.2d 328, 269 Ill.Dec. 503, 781 N.E.2d 300, 306 (2002).

19. *Bartrug v. Commonwealth*, Ky.App., 582 S.W.2d 61, 63 (1979)(stating that the trial court's discretion in sentencing is controlled by the mandatory term in sentencing statute).

20. 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

*policy enacted into statutes*" [emphases added] [citations omitted].[21]

Thus, any judicial discretion in setting criminal penalties is derived from and subject to the legislature's power to establish criminal punishment. In turn, the courts are required to impose an otherwise valid sentence prescribed by the legislature and the fact that the sentence is a single mandatory term does not violate the separation of powers.[22] Accordingly, KRS 532.043 does not violate the separation of powers doctrine by usurping judicial authority or by infringing upon judicial functions.

 Wilfong further suggests that "public policy" cautions against allowing the legislature to create mandatory punishment for sexual offenders because it could lead to abuse in sentencing for other crimes. This argument raises the same issues presented in Wilfong's separation of powers argument. It is well-established that the enunciation of public policy is the domain of the legislature; the courts interpret the law and do not enact legislation.[23] "The propriety, wisdom and expediency of statutory enactments are exclusively legislative matters."[24] The court cannot invalidate a statute merely because it disagrees with the public policy embodied in the statute.[25]

As indicated earlier, the determination of penalties for criminal conduct necessarily concerns the consideration of various public policy interests that are peculiarly within the role of the legislature. In *Harmelin v. Michigan*,[26] Justice Kennedy stated:

Determinations about the nature and purposes of punishment for criminal acts implicate difficult and enduring questions respecting the sanctity of the individual, the nature of law, and the relation between law and the social order. . . . The efficacy of any sentencing system cannot be assessed absent agreement on the purposes and objectives of the penal system. And the responsibility for making these fundamental choices and implementing them lies with the legislature [citations omitted].

Absent challenges involving specific constitutional or statutory prohibitions, this Court has no authority to invalidate KRS 532.043 on public policy grounds.

**21.** *Id.* 500 U.S. at 467, 111 S.Ct. 1919 (quoting *Lockett v. Ohio*, 438 U.S. 586, 604–05, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978)).

**22.** *See, e.g., United States v. Van Horn*, 798 F.2d 1166, 1168 (8th Cir.1986)(stating that Congress need not provide range of options for the court and can establish a mandatory set sentence); *People v. Hill*, 199 Ill.2d 440, 264 Ill.Dec. 670, 771 N.E.2d 374 (2002)(stating that mandatory additional 15–year sentence for armed burglary did not violate separation of powers); *State v. Johnson*, 350 S.C. 543, 567 S.E.2d 486 (App.2002)(upholding mandatory life imprisonment without parole under state two-strikes law against separation of powers challenge); *People v. Boyd*, 23 P.3d 1242 (Colo.App.2001)(stating that sentencing court was required to impose mandatory five-year parole term); *State v. De La Cruz*, 302 S.C. 13, 393 S.E.2d 184 (1990)(rejecting argument that mandatory sentence for trafficking in cocaine of 25 years without suspension of sentence or possibility of probation violated separation of powers by depriving sentencing court of discretion); and *Commonwealth v. Waters*, 334 Pa.Super. 513, 483 A.2d 855 (1984)(stating that mandatory life sentence for first-degree murder did not violate separation of powers).

**23.** *Wilson v. Kentucky Transportation Cabinet*, Ky., 884 S.W.2d 641, 646 (1994).

**24.** *Owens v. Clemons*, Ky., 408 S.W.2d 642, 645 (1966).

**25.** *Commonwealth, ex rel. Cowan v. Wilkinson*, Ky., 828 S.W.2d 610, 614 (1992).

**26.** 501 U.S. 957, 998, 111 S.Ct. 2680, 2703, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring).

## B. Jury Sentencing

 Wilfong also contends that KRS 532.043 is invalid because it infringes upon the duties of the jury. He correctly concedes that he has no federal or state constitutional right to have a jury fix the sentence or penalty.[27] Further, Wilfong does not challenge the legislature's authority to eliminate jury consideration of that portion of the sentence mandating post-incarceration conditional discharge.[28] However, he notes that KRS 532.055, the Truth in Sentencing Statute, provides generally for jury sentencing. Wilfong asserts that in order to fulfill its role in sentencing, the jury should be provided information regarding the statutorily required post-incarceration, three-year term of conditional discharge for sex offenders. He argues that KRS 532.043 should not be construed to prohibit informing the jury of the mandatory post-incarceration, conditional discharge term. He contends that such a procedure would illegally infringe upon the jury's duty in considering the indeterminate term of the sentence.[29] However, since Wilfong pled guilty and was not sentenced by a jury, his request that this Court declare KRS 532.043 to be in violation of KRS 532.055 and the constitutional guarantee of due process is wholly without merit.[30]

## III. CONDITIONS OF CONDITIONAL DISCHARGE

In addition to challenging the imposition of post-incarceration conditional discharge, Wilfong contests the actual conditions of his conditional discharge as violating his right to due process. During the term of post-incarceration conditional discharge, defendants are subject to the orders of the Department of Corrections.[31] Department of Corrections' policies impose several special conditions on conditional dischargees which mirror those imposed upon defendants convicted of sex offenses who are granted probation or parole.[32] Wilfong objects to the following conditions of his conditional discharge: (1) that he not establish a romantic relationship with an adult without prior approval from his probation officer; (2) that he not possess any sexually arousing materials; (3) that he not reside near, visit, or be in or about various places where children congregate without advance approval of his probation officer; and (4) that he not possess items on his person or property that attract children.

 Wilfong alleges that these conditions provide insufficient notice of prohibited conduct and that they are overly broad, thereby unfairly exposing him to reincarceration. While the revocation of supervised release is not part of a criminal prosecution requiring the full panoply of due process protections, the conditional loss of freedom embodied in the revocation of supervised release constitutes a depriva-

---

**27.** *See Spaziano v. Florida,* 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340 (1984)(recognizing that there was no federal constitutional right to jury sentencing even for capital offenses); and *Perry v. Commonwealth,* Ky., 407 S.W.2d 714, 715 (1966)(holding that there was no right to jury sentencing under Kentucky Constitution § 7).

**28.** *See also* Kentucky Rules of Criminal Procedure (RCr) 9.84(1).

**29.** See generally *Boone v. Commonwealth,* Ky., 780 S.W.2d 615 (1989)(holding that de-

fendant has due process right to introduce evidence on minimum parole eligibility in sentencing phase).

**30.** *Kohler v. Benckart,* Ky., 252 S.W.2d 854, 858 (1952)(stating that "[o]nly those [persons] who are prejudiced by an unconstitutional law can complain of it").

**31.** KRS 532.043(3).

**32.** *See* Kentucky Corrections Policies and Procedures (CPP) 27–30–02.

tion of a defendant's liberty which invokes certain limited procedural due process rights.[33] Among those rights is the right of fair notice or warning of the conduct that may result in the revocation of supervised release.[34] Whether a condition of conditional discharge violates a defendant's constitutional rights is a legal question that is reviewed *de novo*.[35]

■■■ While not stated in these express terms, Wilfong's objections to the conditions of his conditional discharge evoke considerations embodied in the void-for-vagueness and overbreadth doctrines. The void-for-vagueness doctrine is based upon the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution;[36] whereas, the overbreadth doctrine is limited generally to protecting against the infringement of other fundamental rights, especially First Amendment rights.[37] The vagueness and overbreadth doctrines are related in that they both prohibit the use of overly ambiguous language in penal provisions, which sometimes has the effect of limiting constitutionally-protected activity.[38]

■■■ Although the vagueness and overbreadth doctrines are related, they are distinct and have significant differences.[39] The vagueness doctrine is rooted in due process principles and is directed toward ensuring fair notice in the clarity and precision of penal provisions; whereas, the overbreadth doctrine focuses on a statute's potential impact on the exercise of a fundamental right.[40] For instance, a provision is too vague if it fails to give fair notice of what it prohibits; and a perfectly clear statute may be unconstitutionally overbroad if it unduly infringes upon a fundamental First Amendment right.[41]

### A. Void–for–Vagueness Doctrine

■■■ The void-for-vagueness doctrine requires a statute to provide fair notice by containing sufficient definiteness so that ordinary people can understand what conduct is prohibited.[42] In addition, the doctrine mandates that the statute be worded in such a manner so as not to encourage arbitrary or discriminatory enforcement.[43] The degree of specificity necessary to avoid unconstitutional vagueness varies depending on the type of provision.[44]

**33.** *See Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)(recognizing that due process rights attach to probation revocation proceedings).

**34.** *United States v. Twitty*, 44 F.3d 410, 412 (6th Cir.1995).

**35.** *United States v. Gallo*, 20 F.3d 7, 11 (1st Cir.1994).

**36.** *See Belle Maer Harbor v. Charter Township of Harrison*, 170 F.3d 553, 556 (6th Cir.1999); and *State v. Gaffney*, 147 N.H. 550, 795 A.2d 243, 246 (2002).

**37.** *Coleman v. DeWitt*, 282 F.3d 908, 914 (6th Cir.2002); *Commonwealth v. Kash*, Ky.App., 967 S.W.2d 37, 42 (1997).

**38.** *See Grayned v. City of Rockford*, 408 U.S. 104, 108, 108–15, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); and *Humanitarian Law*

*Project v. United States Department of Justice*, 352 F.3d 382 (9th Cir.2003).

**39.** *See generally Martin v. Commonwealth*, Ky., 96 S.W.3d 38 (2003).

**40.** *See United States v. Morison*, 844 F.2d 1057, 1070 (4th Cir.1988).

**41.** *See Grayned*, 408 U.S. at 114, 92 S.Ct. 2294.

**42.** *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

**43.** *Kolender*, 461 U.S. at 357, 103 S.Ct. 1855.

**44.** *Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974)(holding that statute reaching expression sheltered by the First Amendment must have greater degree of specificity than in other contexts).

Nevertheless, the legislature need not define every term or factual situation in a statute, and terms left undefined are to be accorded their common, everyday meaning.[45] Absolute or exact precision is not required since "flexibility and reasonable breadth" in the language chosen is constitutionally acceptable.[46] In reviewing a vagueness challenge, the essential inquiry is whether the statute describes the forbidden conduct sufficiently so that persons of common intelligence disposed to obey the law can understand its meaning and application.[47] The Supreme Court of the United States has indicated that the arbitrary enforcement prong is more important than the actual notice element and requires "minimal guidelines" sufficient to limit the discretion of government officials.[48] The statute should contain objective, normative standards to prevent purely subjective decisions by government officers in enforcing the statute.[49]

## B. Overbreadth Doctrine

The overbreadth doctrine generally involves a claim that in an effort to control proscribable conduct, a statute impermissibly reaches constitutionally permissible conduct.[50] However, when First Amendment rights involving conduct rather than speech is at issue, an overbreadth challenge only exists where the impact of the statute upon these rights is both real and substantial when considered in relation to the statute's plainly legitimate sweep.[51] A law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications.[52] The overbreadth claimant bears the burden of demonstrating from the text of the law that substantial overbreadth exists.[53] In order to withstand a facial overbreadth challenge, a content-neutral statute regulating expression must be narrowly tailored to further a significant gov-

45. *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir.1996); *O'Leary v. Commonwealth*, Ky., 441 S.W.2d 150, 155 (1969)(stating that a penal statute need not include every exculpatory circumstance).

46. *See Grayned*, 408 U.S. at 110, 92 S.Ct. 2294; and *Kash*, 967 S.W.2d at 43 (stating that "simply because a criminal statute could have been written more precisely does not mean the statute as written is unconstitutionally vague").

47. *See, e.g., Commonwealth v. Foley*, Ky., 798 S.W.2d 947, 951 (1990)(stating that analysis of constitutional vagueness includes inquiry as to "whether a person disposed to obey the law could determine with reasonable certainty from the language used whether contemplated conduct would amount to a violation") *overruled on other grounds by Martin*, 96 S.W.3d at 38; *Hardin v. Commonwealth*, Ky., 573 S.W.2d 657, 660 (1978)(applying a "man on the street approach"); and *Sasaki v. Commonwealth*, Ky., 485 S.W.2d 897, 901 (1972)(stating that " '[t]he accepted test in determining the required precision of statutory language imposing criminal liability is whether the language conveys a sufficiently

definite warning as to the proscribed conduct when measured by common understanding and practices' " (quoting *Anderson v. United States*, 215 P.2d 84 (6th Cir.1954))).

48. *See Kolender*, 461 U.S. at 358, 103 S.Ct. 1855.

49. *See, e.g., City of Chicago v. Morales*, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999).

50. *See Hause v. Commonwealth*, Ky.App., 83 S.W.3d 1, 5 (2001); and *State Board for Elementary & Secondary Education v. Howard*, Ky., 834 S.W.2d 657, 662 (1992).

51. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973).

52. *New York v. Ferber*, 458 U.S. 747, 771, 102 S.Ct. 3348, 3362, 73 L.Ed.2d 1113 (1982); *Martin*, 96 S.W.3d at 57 n. 14.

53. *Virginia v. Hicks*, 539 U.S. 113, 123 S.Ct. 2191, 2198, 156 L.Ed.2d 148 (2003).

ernment interest.[54] However, a court facing an overbreadth challenge may and should narrowly construe a statute to avoid constitutional problems if possible.[55]

▬▬ Supervised-release conditions are subject to the constitutional doctrines of vagueness and overbreadth.[56] However, the principles embodied in those doctrines must be applied consistently with the unique characteristics of supervised release. Inherent in the very nature of supervised release is the fact that persons on supervised release do not enjoy the absolute liberty accorded ordinary citizens.[57] With respect to vagueness, a supervisory-release condition is not unconstitutionally vague (1) if a reasonably intelligent releasee could understand what conduct is required of him; and (2) the condition is sufficiently precise to prevent arbitrary enforcement.[58]

▬▬ Supervisory-release conditions need not describe every possible permutation and "can be written—and must be read—in a commonsense way."[59] Supervisory-release conditions may interfere with a releasee's fundamental constitutional rights.[60] As a general matter, supervisory-release conditions must be rationally related to the purposes of supervisory release, which are rehabilitation of the releasee, deterrence of future criminal activity, and protection of the public from the releasee's being at large.[61] Some courts have held that a supervisory-release condition which impinges on a releasee's fundamental constitutional rights must be narrowly tailored and reasonably related to the state's significant interest in the purpose of supervisory release, i.e., rehabilitation, deterrence, and protection of the public.[62]

---

**54.** See, e.g., Grayned, 408 U.S. at 110, 92 S.Ct. 2294 (noting that statute infringing on First Amendment rights challenged as overbroad must be narrowly tailored to further significant government interest).

**55.** See Ferber, 458 U.S. at 769 n. 24, 102 S.Ct. 3348; Broadrick, 413 U.S. at 613, 93 S.Ct. 2908; and Martin, 96 S.W.3d at 56.

**56.** See, e.g., United States v. Loy, 237 F.3d 251, 269 (3rd Cir.2001); Oyoghok v. Municipality of Anchorage, 641 P.2d 1267 (Alaska Ct.App. 1982); People v. Lopez, 66 Cal.App.4th 615, 78 Cal.Rptr.2d 66 (1998); State v. Kessler, 199 Ariz. 83, 13 P.3d 1200 (App.2000); and Neil P. Cohen, The Law of Probation and Parole (2nd ed.1999).

**57.** See United States v. Knights, 534 U.S. 112, 119, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001); Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)(stating that probationer's privacy interests are less than that of public at large); United States v. Vincent, 167 F.3d 428, 430 (8th Cir.1999); United States v. Consuelo–Gonzalez, 521 F.2d 259, 265 (9th Cir.1975); and State v. Faraday, 268 Conn. 174, 842 A.2d 567, 574 (2004).

**58.** See, e.g., United States v. Lee, 315 F.3d 206, 214 (3d Cir.2003); Loy, 237 F.3d at 264–65;

State v. Lo, 228 Wis.2d 531, 599 N.W.2d 659, 661 (1999); People v. Lopez, 66 Cal.App.4th 615, 78 Cal.Rptr.2d 66, 75 (Cal.App.1998); People v. Reinertson, 178 Cal.App.3d 320, 223 Cal.Rptr. 670, 672 (1986).

**59.** United States v. Gallo, 20 F.3d 7, 12 (1st Cir.1994).

**60.** See United States v. Myers, 864 F.Supp. 794, 800 (N.D.Ill.1994); Saidi v. State, 845 So.2d 1022, 1028 (Fla.App.2003); and Commonwealth v. Pike, 428 Mass. 393, 701 N.E.2d 951, 959 (1998).

**61.** See, e.g., Griffin, 483 U.S. at 875, 107 S.Ct. 3164; United States v. York, 357 F.3d 14 (1st Cir.2004); United States v. Peete, 919 F.2d 1168, 1181 (6th Cir.1990); Commonwealth v. Williams, 60 Mass.App.Ct. 331, 801 N.E.2d 804, 805 (2004); and Woodson v. State, 864 So.2d 512 (Fla.App.2004).

**62.** See, e.g., Loy, 237 F.3d at 264–65 (stating that supervisory-release conditions affecting First Amendment rights must be narrowly tailored and directly related to rehabilitation and protecting public); United States v. Crandon, 173 F.3d 122, 128 (3d Cir.1999)(same); People v. Garcia, 19 Cal.App.4th 97, 23 Cal.

■ Wilfong asks this Court to apply the more relaxed standing requirements associated with facial constitutional challenges to the supervisory-release conditions by analyzing them on behalf of all persons who will be subject to post-incarceration conditional discharge. We decline to do so for several reasons. First, unlike statutes, supervisory-release conditions are directed at individual defendants rather than the expansive general public. Therefore, application of vagueness and overbreadth principles to challenges to supervisory-release conditions, even those involving First Amendment rights, typically concern the circumstances of the releasee rather than hypothetical situations involving all potentially affected releasees. The broader standing practices of the facial overbreadth doctrine, which represent an exception to the normal "as-applied" approach, were developed because of the judicial assumption that "the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes."[63] Supervisory-release conditions have a much narrower application and individual releasees have a greater incentive to challenge them. Supervisory releasees also have diminished constitutional rights. In other words, Wilfong has not shown that the restriction on protected-constitutional activity is sufficiently real and substantial in relation to the legitimate scope of government regulation of persons on supervisory release to justify a facial challenge with the relaxed standing approach.[64] While we will consider Wilfong's pre-enforcement challenges to the conditions,[65] we will only review them on an as-applied basis with reference to his situation and not all hypothetical third-parties.[66] With these principles in mind, we turn to each of the conditions challenged by Wilfong.

## C. The Individual Conditions of Conditional Discharge

### 1. Dating, intimate, or sexual relations with an adult

The first condition prohibits Wilfong from establishing a "dating, intimate, sexual relationship with an adult without prior approval of a Probation and Parole Officer and treatment clinician." Wilfong fails to explain how the condition is unconstitutional except to question the fact that it applies to relationships with adults. Wilfong apparently implies that it is overbroad because he was convicted of sexual abuse of a minor.

■ In *Krebs v. Schwarz*,[67] the Court upheld as not overbroad a probation condition prohibiting Krebs, who had been convicted for sexual assault of his daughter, from entering into any dating, intimate, or sexual relationship with any person without first notifying and obtaining approval

Rptr.2d 340, 342 (1993); and *People v. Bauer,* 211 Cal.App.3d 937, 260 Cal.Rptr. 62, 65 (1989).

63. *Broadrick,* 413 U.S. at 612, 93 S.Ct. 2908.

64. *See, e.g., Kessler,* 13 P.3d at 1205.

65. *See Loy,* 237 F.3d at 264–65; *State v. Wright,* 137 Ohio App.3d 737, 739 N.E.2d 1172, 1174 (2000)(rejecting argument that probationer could not challenge vagueness

and overbreadth of condition prior to being charged with violation); *Cf. Mangarella v. State,* 117 Nev. 130, 17 P.3d 989 (2001)(involving direct appeal from judgment on guilty plea challenging mandatory condition of probation as unconstitutionally vague and overbroad).

66. *See Oyoghok,* 641 P.2d at 1267.

67. 212 Wis.2d 127, 568 N.W.2d 26 (1997).

from his probation officer. The Court noted that the condition only minimally interfered with Krebs's constitutional right to privacy since it did not prohibit intimate relationships, but only required that he obtain approval for them. Second, the Court found that the condition furthered the goals of probation. The Court stated that the condition served to protect the public by allowing the probation officer to inform Krebs's potential partners of his sexual criminal background for both their own protection, and for the protection of any children to whom they might be connected.[68] The condition also allowed the probation officer to verify the mental capacity of potential partners who might be vulnerable to manipulation by Krebs.[69] The Court deemed the condition rationally related to Krebs's rehabilitation by forcing him to confront and to admit to his sexually deviate behavior.[70] It concluded that the condition was narrowly drawn and reasonably related to his rehabilitation.[71] Similarly, we conclude that the condition requiring Wilfong to obtain approval from his probation officer and treatment clinician before establishing a dating, intimate, or sexual relationship with an adult is not unconstitutionally overbroad since it is sufficiently tailored and reasonably related to the purpose of supervisory release.

### 2. Sexually arousing materials

The second condition challenged by Wilfong prohibits him from possessing "any sexually arousing materials, to include videos, magazines, books, games, sexual devices or aids, or any material which depicts partial or complete nudity or sexually explicit language." The condition also prohibits Wilfong from "visit[ing] strip joints, adult bookstores, motels which supply adult movies, or businesses which sell sexual devices or aids...." While this condition affects the exercise of Wilfong's First Amendment rights, a supervisory releasee does not have an unqualified First Amendment right to sexually-stimulating or sexually-oriented materials.[72] While the term "sexually arousing materials" is arguably ambiguous, it should be construed in relationship to the remainder of the provision, which mentions nudity and establishments catering to purely sexually-stimulating interests. We conclude that a commonsense reading of this condition provides sufficient precision to defeat a vagueness challenge.[73]

With respect to overbreadth, it is a legitimate concern that exposure to sexually-arousing or sexually-orientated materials may contribute to sexual deviancy or the possibility of future sexually-abusive behavior. Accordingly, reducing access to

68. *Krebs*, 568 N.W.2d at 28.

69. *Id.* at 29.

70. *Id.* at 28.

71. *Id.* at 29. *See also Smith v. State*, 779 N.E.2d 111 (Ind.App.2002)(upholding condition requiring sexual offender to notify probation officer of any dating, intimate or sexual relationship was reasonable to protect children who Smith might gain access to through adult relationships).

72. *See United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir.2002).

73. *See, e.g., United States v. Phipps*, 319 F.3d 177 (5th Cir.2003)(finding condition prohibiting possession of "sexually oriented or sexually stimulating materials" not constitutionally vague); *United States v. Bee*, 162 F.3d 1232, 1234–35 (9th Cir.1998) (finding condition prohibiting possession of "sexually stimulating or sexually oriented materials" not a violation of First Amendment). *But see Fitzgerald v. State*, 805 N.E.2d 857 (Ind.App.2004)(finding condition prohibiting possession of pornographic or sexually-explicit materials or any material which depicts partial or complete nudity or sexually-explicit language unconstitutionally vague).

sexually-arousing or sexually-oriented materials furthers the goals of rehabilitation, deterrence, and public safety in connection with sexual offenders.[74] In addition, the condition is narrowly tailored by providing specific examples of the types of materials and locations covered by the provision. As a result, it is neither unconstitutionally vague nor overbroad.

### 3. Presence at locations where children congregate

The third condition states that Wilfong will not "reside near, visit, or be in or about parks, schools, day care centers, swimming pools, beaches, theaters, or other places where children congregate without advance approval of [his probation officer]." This condition affects Wilfong's First Amendment right of association and his protected liberty interest in freedom of movement.[75]

In *Carswell v. State*,[76] Carswell was prohibited from residing near "any area where children congregate." The Court held that this phrase was void-for-vagueness for failing to state any predictable standard for identifying in advance the places near which Carswell was forbidden to reside.[77] It stated that children congregate in numerous varying locations and Carswell's place of residence should not be

subject to the whim of local children and where they might choose to gather.[78] However, the Court implied that any vagueness problem could be cured if the condition were more precise by identifying "specific places such as schoolyards, playgrounds and the like where children can be expected to congregate as a usual thing." [79]

Similarly, in *State v. Simonetto*,[80] the Court upheld a probation condition that prohibited Simonetto from going to places where children might congregate, including, but not limited to schools, day care centers, playgrounds, parks, beaches, pools, shopping malls, theaters, or festivals, without approval from his probation officer. The Court noted that Simonetto was not absolutely prohibited from going to places where a child might be.

> Rather, he may not go at will to those areas where commonsense tells us that children are likely to gather. The court's list—schools, day care centers, playgrounds, parks, beaches, pools, shopping malls, theaters and festivals—while not exhaustive, was certainly extensive enough to give Simonetto a clear idea of where he could not go. And should he wish to go to one of the listed locations, he can—he just has to get prior approval from his agent.[81]

**74.** *See, e.g., Smith,* 779 N.E.2d at 118 (restricting sexual offender's exposure to sexually-explicit material while on supervisory release protects children from possible endangerment and would likely aid supervisory releasee's rehabilitation). *See also United States v. Rearden,* 349 F.3d 608 (9th Cir.2003)(finding supervisory-release condition prohibiting possession of "materials depicting sexually explicit conduct" not unconstitutionally vague or overbroad); and *Amatel v. Reno,* 156 F.3d 192 (D.C.Cir.1998)(discussing evidence on negative effect of exposure of prison inmates to sexually-explicit materials on their rehabilitation).

**75.** *See, e.g., Morales,* 527 U.S. at 53, 119 S.Ct. 1849 (discussing liberty interest in freedom of movement).

**76.** 721 N.E.2d 1255 (Ind.App.1999).

**77.** *Carswell,* 721 N.E.2d at 1260.

**78.** *Id.*

**79.** *Id.*

**80.** 232 Wis.2d 315, 606 N.W.2d 275 (1999).

**81.** *Simonetto,* 606 N.W.2d at 277–78. *See also Britt v. State,* 775 So.2d 415 (Fla.App.2001)(holding condition that prohib-

In *United States v. Paul,*[82] the Court held that a supervised-release condition instructing Paul to "avoid places, establishments, and areas frequented by minors" was not unconstitutionally vague:

Certainly, it would be impossible to list within the text of Paul's condition every specific location that he is prohibited from frequenting during the term of his release. Sentencing courts must inevitably use categorical terms to frame the contours of supervised release conditions. Such categorical terms can provide adequate notice of prohibited conduct when there is a commonsense understanding of what activities the categories encompass. Indeed, it is well established that the requirement of reasonable certainty "does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." [83]

In addition, the courts have recognized that supervisory-release conditions which prohibit releasees convicted of child-sexual abuse from going to places where children congregate are reasonably designed to further the goals of supervisory release by reducing their access to children. This type of condition protects children from possible future abuse and assists in the offender's rehabilitation by removing the temptation presented to sexual offenders and reducing the opportunity for additional offenses.[84]

In the case before us, we hold that the condition prohibiting Wilfong from residing near, visiting or being in or about parks, schools, day care centers, swimming pools, beaches, theaters, or other places where children congregate without advance approval of his probation officer is not unconstitutionally vague or overbroad. A commonsense reading of the provision suggests an interplay between the several places listed and the reference to locations where children congregate. Thus, it is sufficiently precise to satisfy the vagueness requirement. Wilfong was convicted of sexual abuse of a minor; thus, the restriction prohibiting him from going to places where he would likely have access to often unsupervised groups of children is reasonably related to the state's interest in protection of the public and the rehabilitation of Wilfong. Further, the condition is narrowly drawn by being limited to certain locations where children can be expected to congregate.

### 4. Possession of items that attract children

The fourth condition provides that Wilfong is "not allowed to possess items on [his] person or property that attract[ ] children." This condition impinges on First Amendment rights of association and expression, and the due process interest in property under the Fourteenth Amendment.[85]

---

ited probationer from living near or working at a "school, daycare center, park, playground, or other place where children regularly congregate" was not unconstitutionally vague).

**82.** 274 F.3d 155 (5th Cir.2001).

**83.** *Id.* at 167 (quoting *Birzon v. King,* 469 F.2d 1241, 1243 (2nd Cir.1972)).

**84.** *See, e.g., Carswell,* 721 N.E.2d at 1260; *Simonetto,* 606 N.W.2d at 277–78; *United States v. Ristine,* 335 F.3d 692, 696–97 (8th

Cir.2003); and *State v. Riles,* 135 Wash.2d 326, 957 P.2d 655, 665 (1998).

**85.** For instance, the condition could cover items such as a television, books, newspapers and literature. *See also People v. Beach,* 147 Cal.App.3d 612, 195 Cal.Rptr. 381, 387 (1983)(discussing impact of probation condition on right to acquire, own, enjoy, and dispose of property guaranteed by the Fourteenth Amendment).

Wilfong attacks this provision as unconstitutionally vague for failing to provide him fair notice of what behavior would constitute a violation of the condition. We hold that the condition is sufficiently precise to allow either him, or enforcement personnel, to distinguish between prohibited and innocent conduct. A supervisory-release condition may use general categories. It is reasonable to assume certain items may be attractive to most children— e.g., toys.

This condition is not overbroad by not being narrowly tailored to serve the purposes of supervisory release. While this condition potentially prohibits the possession of a large number of common items useful or attractive to adults, e.g., video games, sports equipment, computers, televisions, or even certain foods, the government interests in rehabilitation and protection of children is served by reducing the possibility of Wilfong's access to children who may be attracted to these items. A commonsense reading of the provision requires that the item attract children. This would obviously include items visible in Wilfong's yard such as a basketball goal or a trampoline, but not items in his home such as a television or food.

### 5. Participation in Sexual Treatment Program

Finally, Wilfong contends that the supervisory-release condition requiring him to "attend, participate, and successfully complete a Sex Offender Treatment Program" violates due process rights. Since admission or acknowledgement of having committed a sexually-offensive act is required in order to obtain certification as having successfully completed the Sexual Offender Program, Wilfong asserts that

this condition is inconsistent with his Alford plea, which allows a defendant to plead guilty to an offense while maintaining his innocence and not admitting guilt. The courts have rejected a similar argument involving the ability of the court to revoke probation for an offender's refusal to acknowledge the commission of the offense as part of his sexual-offender treatment program.

For example, in Faraday, supra,[86] the Court held that the imposition of a requirement that the defendant admit guilt in order to successfully complete a sexual-offender treatment program was not inconsistent with the entry of an Alford plea. "The entry of a guilty plea under the Alford doctrine carries the same consequences as a standard plea of guilty. By entering such a plea, a defendant may be able to avoid formally admitting guilt at the time of sentencing, but he nonetheless consents to being treated as if he were guilty with no assurances to the contrary." [87] Since the trial court's acceptance of Faraday's Alford plea did not imply that he could unconditionally maintain his innocence for any and all purposes, the Court stated that his probation could be revoked for his refusing to admit guilt in conjunction with his treatment.

In State ex rel. Warren v. Schwarz,[88] the trial court ordered Warren to complete counseling as a condition of probation following his Alford plea to first-degree sexual assault of a minor. Warren challenged the revocation of his probation for violating the counseling condition after he refused to admit guilt and was therefore discharged from the treatment program. The appellate court rejected Warren's contention that revoking his probation based

**86.** 842 A.2d at 567.

**87.** Id. at 588.

**88.** 211 Wis.2d 710, 566 N.W.2d 173 (App. 1997).

upon his denial of guilt in the treatment program was a violation of his due process rights when his conviction was pursuant to an *Alford* plea. The Court noted that the Department of Corrections was authorized to require sexual offenders to admit responsibility for their offenses as part of their treatment and the requirement was an appropriate condition of probation in order to serve the goals of rehabilitating the probationers and protecting the public. It held that the trial court's acceptance of Warren's *Alford* plea did not limit the requirements that the Department of Corrections could lawfully impose on Warren, and that his right to due process was not violated by requiring him to admit responsibility for the sexual assault as a condition of probation.[89] The Court stated, "An *Alford* plea does not imply a promise or assurance of anything. More accurately stated, an *Alford* plea, if accepted by the trial court, permits a conviction without requiring an admission of guilt and while permitting a protestation of innocence. There is nothing inherent in the nature of an *Alford* plea that gives a defendant any rights, or promises any limitations, with respect to the punishment imposed after the conviction."[90] We agree with the reasoning of these courts and likewise reject Wilfong's assertion that due process prohibits the imposition of a condition of conditional discharge that he successfully complete the Sexual Offender Treatment Program, or that as a part of that program, he admit guilt or commission of the offenses for which he was convicted pursuant to his *Alford* plea.

In conclusion, we hold that the sentence of a mandatory post-incarceration, three-year period of conditional discharge for sexual offenders as required by KRS 532.043 is not unconstitutional as a violation of the separation of powers doctrine. In addition, the conditions of conditional discharge challenged by Wilfong do not violate his constitutional due process rights. Finally, the condition that he successfully complete the Sexual Offender Treatment Program is not inconsistent with his *Alford* plea and does not violate his due process rights.

For the foregoing reasons, the judgment of the Meade Circuit Court is affirmed.

ALL CONCUR.

---

89. *Schwarz,* 566 N.W.2d at 178.

90. *Schwarz,* 566 N.W.2d at 177. *See also People v. Birdsong,* 958 P.2d 1124, 1130 (Colo. 1998); and *State v. Jones,* 129 Idaho 471, 926 P.2d 1318 (App.1996).