Ina COCHRAN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2008–SC–000095–DG.

Supreme Court of Kentucky.

June 17, 2010.

---

**11.** *See Wood v. Commonwealth,* 178 S.W.3d 500, 515–16 (Ky.2005).

**12.** 77 S.W.3d 558 (Ky.2002).

Kathleen Kallaher Schmidt, Jamesa J. Drake, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, James Coleman Shackelford, Assistant Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Allison G. Harris, Shearman & Sterling LLP, Tiloma Jayasinghe, Lynn M. Paltrow, Kathrine D. Jack, National Advocates for Pregnant Women, New York, NY, Michael L. Goodwin, Louisville, KY, Counsel for Amicus Curiae American College of Obstetricians and Gynecologists; American Psychiatric Association; American Society of Addiction Medicine; Baron Edmond De Rothschild Chemical Dependency Institute of Beth Israel Medical Center; Carol Stange, MSSW; Child Welfare Organizing Project; Fran Belvin, CPAT; Kentucky Coalition for Women's Substance Abuse Services; Kentucky Psychiatric Medical Association; Law Students for Reproductive Justice; Lynn Posze, MA, LPCC; Nancy Day, Phd; National Asian Pacific American Women's Forum; National Association of Social Workers; National Coalition for Child Protection Reform; National Perinatal Association; Northwest Women's Law Center; Our Bodies Ourselves; Pathways, Inc.; People Advocating Recovery; Sistersong Women of Color Reproductive Health Collective; Stephanie S. Covington, Phd, LCSW; Susan Barron, Phd; Susan Boyd, Phd; The Drug Policy Alliance; The Healing Place Women's and Children's Community.

Sheryl G. Snyder, Amy D. Cubbage, Frost Brown & Todd LLC, Louisville, KY, Jill C. Morrison, Washington, DC, Counsel for Amicus Curiae Legal Momentum and National Women's Law Center.

Caroline Bettinger–Lopez, Columbia Law School, New York, NY, Michael Jay O'Hara, O'Hara, Ruberg, Taylor, Sloan & Sergent, Covington, KY, Counsel for Amicus Curiae Anti–Sexism Committee of the National Lawyers Guild; Center for Reproductive Rights; Columbia Law School Human Rights Clinic; Columbia Law School Sexuality and Gender Law Clinic; Constitutional Litigation Clinic at Rutgers School of Law—Newark; Criminal Justice Clinic at Hofstra Law School; International Mental Disability Law Reform Project in the Justice Action Center at New York Law School; International Reproductive and Sexual Health Law Programme at the University of Toronto; Jamie O'Connell (University of California, Berkeley School of Law, International Human Rights Law Clinic); Justice Now; Leitner Center for International Law & Justice at Fordham Law School; Mindy Jane Roseman (Harvard Law School, Human Rights Program); Southwest Women's Law Center.

David Alan Friedman, William Ellis Sharp, ACLU of Kentucky, Louisville, KY, Counsel for Amicus Curiae American Civil Liberties Union Foundation Reproductive Freedom Project; American Civil Liberties Union of Kentucky.

Forrest Roberts, Owensboro, KY, Lawrence J. Nelson, Law Offices of Lawrence J. Nelson, San Francisco, CA, Counsel for Amicus Curiae American Academy of Addiction Psychiatry; Anna C. Mastroianni, JD, MPH; Bryan Hilliard, Phd; C. Ronald Koons, MD, FACP; Cavin P. Leeman, Phd; David Magnus, Phd; Donald Brunnquell, Phd, LP; Elaiane Morgan, MD; Glenn McGee, Phd; Global Lawyers and Physicians; Gregory Loeben, Phd; Hilde Lindemann, Phd; Howard Brody, MD, Phd; Howard Minkoff, MD; Inmaculada De Melo–Martin, Phd, MS; Jeffrey Kahn, Phd, MPH; Judith Bernstein, RNC, Phd; Katherine A. Taylor, JD, Phd; Lauren G. McAliley, MSN, MA, CNP; Lois Shepard, JD; Mary Faith Marshall, Phd; Peter J. Cohen, MD, JD; Rebecca Bigoney, MD; Rev. Timonthy A. Thorstenson; Robert A. Deweese, MD, MA; Rosamond Rhodes, Phd; Stephen S. Hanson, Phd; Susan K. Palmer, MD; Timothy F. Murphy, Phd.

**OPINION OF THE COURT**

This appeal considers whether a woman may be charged with wanton endangerment of her child based on having ingested illegal drugs while pregnant. As this Court previously recognized in *Commonwealth v. Welch,* 864 S.W.2d 280 (Ky.1993), the General Assembly has expressly precluded such a prosecution by the Maternal Health Act of 1992. Therefore, we hold that the trial court properly dismissed the indictment in this case.

On December 29, 2005, Appellant, Ina Cochran, gave birth to a child who tested positive (as did Cochran) for cocaine. As a result, Cochran was indicted for first-degree wanton endangerment,[1] and for being a second-degree persistent felony offender (PFO II).[2] The indictment alleged that Cochran,

> under circumstances manifesting extreme indifference to the value of human life ... wantonly engaged in conduct which created a substantial danger of death or serious physical injury to [C.C.] (DOB: 12/29/2005) when she ingested cocaine while [C.C.] was *in utero* and thereafter gave birth to [C.C.] at such time as both the Defendant and [C.C.] were positive for cocaine....

Cochran moved to dismiss the indictment pursuant to *Commonwealth v. Welch,* 864 S.W.2d 280. The trial court granted the motion and dismissed the indictment. The Commonwealth appealed. The Court of Appeals reversed the trial court's order dismissing the indictment, erroneously concluding that *Commonwealth v. Morris,* 142 S.W.3d 654 (Ky. 2004), had, *sub silentio,* overruled *Welch.* This Court granted discretionary review and we reverse the Court of Appeals. As we previously recognized in *Welch,* which was not overruled by *Morris,* the prosecution of Cochran on the grounds stated in the indictment has been prohibited by the General Assembly.

■ The prosecution in this case is basically identical to that which we held invalid in *Welch.* The appellant therein, Connie Welch, was arrested in a drug raid when she was eight months pregnant, and was discovered by police to have just injected herself with oxycodone. Three weeks later she gave birth. The child did not test

---

1. KRS 508.060.

2. KRS 532.080.

positive for illegal substances, but did suffer symptoms of drug withdrawal, resulting from having become passively addicted due to Welch's drug abuse during her pregnancy. Welch was charged with, and convicted of, second-degree criminal abuse of the child for having used oxycodone while pregnant.[3] We held that two grounds required reversal of the conviction—that application of the criminal abuse statutes to prenatal conduct would render the statutes void for vagueness, and that the General Assembly, in the Maternal Health Act of 1992, expressly prohibited the prosecution.

First, we recognized that the application of the criminal abuse statutes[4] to a woman's conduct during pregnancy, "could have an unlimited scope and create an indefinite number of new 'crimes' . . . a 'slippery slope' whereby the law could be construed as covering the full range of a pregnant woman's behavior—a plainly unconstitutional result that would, among other things, render the statutes void for vagueness." *Welch*, 864 S.W.2d at 283 (citation omitted). We explained:

> The mother was a drug addict. But, for that matter, she could have been a pregnant alcoholic, causing fetal alcohol syndrome; or she could have been addicted to self abuse by smoking, or by abusing prescription painkillers, or over-the-counter medicine; or for that matter she could have been addicted to downhill skiing or some other sport creating serious risk of prenatal injury, risk which the mother wantonly disregarded as a

matter of self-indulgence. What if a pregnant woman drives over the speed limit, or as a matter of vanity doesn't wear the prescription lenses she knows she needs to see the dangers of the road? The defense asks where do we draw the line on self-abuse by a pregnant woman that wantonly exposes to risk her unborn baby? The Commonwealth replies that the General Assembly probably intended to draw the line at conduct that qualifies as criminal, and then leave it to the prosecutor to decide when such conduct should be prosecuted as child abuse in addition to the crime actually committed.

> However, it is inflicting intentional or wanton injury upon the child that makes the conduct criminal under the child abuse statutes, not the criminality of the conduct per se. The Commonwealth's approach would exclude alcohol abuse, however devastating to the baby in the womb, unless the Commonwealth could prove an act of drunk driving; but it is the mother's alcoholism, not the act of driving that causes the fetal alcohol syndrome. The "case-by-case" approach suggested by the Commonwealth is so arbitrary that, if the criminal child abuse statutes are construed to support it, the statutes transgress reasonably identifiable limits; they lack fair notice and violate constitutional due process limits against statutory vagueness.

*Id.*

While the appellant in *Welch* was charged with second-degree criminal

---

**3.** KRS 508.110, which provides, in relevant part:

 (1) A person is guilty of criminal abuse in the second degree when he wantonly abuses another person or permits another person of whom he has actual custody to be abused and thereby:

 (a) Causes serious physical injury; or

 (b) Places him in a situation that may cause him serious physical injury. . . .

**4.** KRS 508.100, .110, and .120, commonly referred to as the criminal child abuse statutes. The purpose of these statutes is to criminalize serious physical abuse of children, twelve years old or less, by a custodial person, although their scope includes others who are physically or mentally helpless. *Welch*, 864 S.W.2d at 282.

abuse, the identical analysis would apply to a construction of the wanton endangerment statutes to cover a pregnant woman's conduct. Such a construction would similarly render the statutes void for vagueness.[5] *Id.*

What *Welch* found most telling, however, in ascertaining that the legislature did not intend criminal sanctions for prenatal use of drugs and alcohol, is the language of the Maternal Health Act of 1992, 1992 Ky. Acts, ch. 442 (H.B.192). 864 S.W.2d at 283–84. The Preamble states the Act's purpose as follows:

> WHEREAS, The General Assembly finds that a woman's ability to bear healthy children is threatened by the consequences of alcoholism and drug abuse; as many as ten percent (10%) of all births in the Commonwealth may be affected by alcohol or drug abuse; drug and alcohol use during pregnancy can result in low birthweight, physical deformities, mental retardation, learning disabilities, and other health problems in newborn infants; fetal alcohol syndrome is the leading identifiable cause of mental retardation in the nation and the only one that is totally preventable; drug and alcohol impaired individuals pose extraordinary societal costs in terms of the medical, educational, and support services needed throughout the individual's lifetime; education and treatment are essential strategies in preventing prenatal exposure to alcohol and other drugs; pregnant substance abusing women face more barriers to substance abuse treatment than other persons seeking treatment; adequate prenatal care is an es-

> sential element in delivering a healthy, well-developed newborn; **punitive actions taken against pregnant alcohol or substance abusers would create additional problems, including discouraging these individuals from seeking the essential prenatal care and substance abuse treatment necessary to deliver a healthy newborn;** and

> WHEREAS, **the General Assembly finds it is necessary to treat the problem of alcohol and drug use during pregnancy solely as a public health problem by seeking expanded access to prenatal care and to alcohol and substance abuse education and treatment programs**[.]

(Emphasis added.)

 It is the duty of a reviewing court "to ascertain and give effect to the intent of the General Assembly." *Beckham v. Board of Education of Jefferson County,* 873 S.W.2d 575, 577 (Ky.1994). In *Welch,* we recognized that the Maternal Health Act of 1992 made clear that

> the General Assembly intends no additional criminal punishment for the pregnant woman's abuse of alcohol and drugs apart from the punishment imposed upon everyone caught committing a crime involving those substances. Welch's possession of the drugs which she took is a punishable offense, but her punishment is not enhanced because she is pregnant, nor is she to be punished for injurious results to the baby. We would have to deliberately ignore the legislative purpose and the legislative approach specified in H.B. 192 to accept

---

**5.** Cochran was charged with first-degree wanton endangerment, KRS 508.060, which provides, in pertinent part, that "[a] person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." Second-degree wanton endangerment, KRS 508.070, requires that a person "wantonly engages in conduct which creates a substantial danger of physical injury to another person."

the Commonwealth's present argument that the General Assembly intended to use the deterrent effect of the criminal child abuse statutes as an additional approach to the self-abuse problem.

864 S.W.2d at 284. Similarly, in the present case, we would have to ignore the legislative intent clearly expressed in the Maternal Health Act of 1992 to accept the Commonwealth's position that the penal code permits the prosecution of Cochran for wanton endangerment of her child based on her use of cocaine while pregnant. It is the legislature, not the judiciary, that has the power to designate what is a crime. *Wilfong v. Commonwealth,* 175 S.W.3d 84, 92 (Ky.App.2004) (citing *Arroyo v. United States,* 359 U.S. 419, 424, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959)); *see also Cornelison v. Commonwealth,* 52 S.W.3d 570 (Ky.2001). The General Assembly has determined that the conduct alleged in the indictment in this case does not constitute a crime. Hence, the indictment was invalid on its face, and the trial court's dismissal thereof was proper. RCr 8.18; *Peterson v. Shake,* 120 S.W.3d 707 (Ky.2003); *Johnson v. Commonwealth,* 709 S.W.2d 838 (Ky.App.1986).

Accordingly, we reverse the opinion of the Court of Appeals, and reinstate the dismissal of the indictment by the trial court.

All sitting. ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER, and SCOTT, JJ., concur. VENTERS, J., dissents by separate opinion, in which MINTON, C.J., joins.

VENTERS, Justice, Dissenting Opinion.

I respectfully dissent. For two reasons I respectfully disagree with the majority's conclusion that the indictment was properly dismissed.

First, the majority wrongly creates an immunity from prosecution never enacted by the General Assembly. The majority fashioned its notion that the legislature intended to immunize Appellant from criminal responsibility for endangering her child from the *preamble* of the Maternal Health Act of 1992 which states "punitive actions taken against pregnant alcohol or substance abusers would create additional problems, including discouraging these individuals from seeking the essential prenatal care and substance abuse treatment necessary to deliver a healthy newborn." That section of the preamble does not relate to the circumstances of this case. The majority ignores the fact that in this case, no punitive action was taken against Appellant while she was pregnant. Long before she was indicted, Appellant had completed all her prenatal care and delivered her baby. Because the indictment came after her baby was born, it in no way discouraged her from seeking prenatal care and it in no way deterred her from treatment she might need to deliver a healthy baby. Thus, the legislative purpose to be gleaned from the preamble of the bill is in no way furthered by dismissal of Appellant's indictment.

Had it been the General Assembly's intent and purpose to block prosecutions in cases such as Appellant's, it surely would have effectuated that intent by enacting the necessary revisions of the penal code and the controlled substance statutes, rather than simply hoping that prosecutors and judges would decipher the supposed purpose from the vague and general language of a bill's preamble, the part of the bill that never became part of the law. *Jasper v. Commonwealth,* 375 S.W.2d 709, 710 (Ky.1964) ("The preamble is not the law. It is not necessary for its enactment, nor are its provisions binding.")

Secondly, Kentucky jurisprudence has long acknowledged the strong doctrine of separation of powers provided in our state Constitution. *Sibert v. Garrett,* 197 Ky. 17, 246 S.W. 455, 457 (1922) ("Perhaps no state forming a part of the national government of the United States has a Constitution whose language more emphatically separates and perpetuates what might be termed the American tripod form of government than does our Constitution....") We have long recognized under that doctrine that the judicial branch of government has no authority to dismiss a valid indictment without the consent of the executive branch represented by the Commonwealth's Attorney or the County Attorney.[6]

The indictment does not charge that Appellant wantonly endangered her unborn child. The indictment very plainly charges her with endangering her post-natal, born alive child, which by any definition is a "person." Despite the fact that the Appellant consumed cocaine just hours or minutes before her baby's birth, the alleged victim of her conduct was the child *ex utero.* Nothing in our penal code bars such a prosecution. By upholding the trial court's dismissal of an indictment before trial, the majority invades the prosecutorial powers reserved to the executive branch, and usurps the authority of the legislature to define what behavior constitutes criminal conduct. I therefore dissent.

MINTON, C.J., joins.

6. *Flynt v. Commonwealth,* 105 S.W.3d 415, 425 (Ky.2003); *Allen v. Walter,* 534 S.W.2d 453, 455 (Ky.1976). *See also Commonwealth v. Cundiff,* 149 Ky. 37, 147 S.W. 767, 768 (1912) and *Com. v. Hayden,* 489 S.W.2d 513, 516 (Ky.1972) ("There is no authority for the use of summary judgment procedure in a criminal prosecution."); *Commonwealth v. Hughes,* 153 Ky. 34, 154 S.W. 399, 400 (1913) ("[the trial court] is without power to dismiss a sufficient indictment without a trial of the defendant, when such dismissal is objected to by the commonwealth's attorney").